[No. 16505-8-II.   Division Two.   August 25, 1995.]

CHRISTINE S. PREST, *Appellant*, v. AMERICAN
BANKERS LIFE ASSURANCE COMPANY, *Respondent*.

*Terry J. Barnett* and *Rumbaugh Rideout & Barnett*, for appellant.

*Neil G. Dorfman* and *Bullivant, Houser, Bailey, Pendergrass & Hoffman*, for respondent.

ALEXANDER, J.* — Christine S. Prest appeals an order of the Pierce County Superior Court vacating a default judgment that had been entered in her favor and against the American Bankers Life Assurance Company (Bankers). She claims that the trial court abused its discretion in granting the motion. We agree with Prest and reverse.

On August 4, 1989, Christine Prest applied for mortgage insurance from Bankers to ensure that her home mortgage payments would continue to be made in the event she became disabled and unable to work. In order to obtain an insurance policy from Bankers, Prest had to complete and sign a written application in which she was required to answer specific questions regarding her medical history. Prest answered "no" to the following question: "Have you ever . . . been treated for . . . back or neck disorder . . . ?" Clerk's Papers at 11.

Prest's application for mortgage insurance was accepted

---

*Judge Gerry L. Alexander was a member of the Court of Appeals, Division Two, at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

by Bankers on October 10, 1989, and coverage became effective on December 1, 1989. On June 13, 1991, Prest suffered a work related back injury that prevented her from continuing her employment as a parcel handler/deliverer for United Parcel Service. Consequently, Prest applied for insurance benefits from Bankers.

In response to Prest's claim, Bankers conducted a routine claim investigation. As a result of its investigation the company discovered that Prest had been treated for a back injury in 1983. Based on what Bankers concluded was Prest's misrepresentation on her application for insurance, Prest's claim was denied.

Prest then initiated suit against Bankers by filing a summons and complaint in Pierce County Superior Court. Service was obtained on Bankers, a corporation that had its principal place of business in Florida, by serving a copy of the summons and complaint on the Office of the Washington Insurance Commissioner on March 20, 1992. The Commissioner, pursuant to RCW 48.05.210, then sent a copy of the summons and complaint by certified mail to "Dennis DiMaggio, General Counsel," the person designated by Bankers to receive copies of legal process. Clerk's Papers at 42. A receipt returned to the insurance commissioner showed that Bankers received the summons and complaint on March 24, 1992, an individual identified only as "SC" signing the return receipt. Clerk's Papers at 89.

The summons forwarded to Bankers indicated that Bankers had sixty days within which to answer the complaint.[1] Bankers failed to answer the complaint within sixty days of the date the summons and complaint was served on the insurance commissioner.[2] Consequently, on May 22, 1992, more than sixty days after the summons

[1]Pursuant to the provisions of RCW 48.05.210(3), an insurer is not required to answer a complaint "until the expiration of forty days after the date of service upon the commissioner."

[2]RCW 48.05.200(1) provides that service upon the commissioner shall constitute service upon the insurer.

and complaint was served on Bankers, Prest moved for entry of an order holding Bankers in default for failing to answer the complaint. The motion was granted and an order of default and judgment was entered.

Subsequently, Bankers moved, pursuant to CR 55(c) and CR 60(b),[3] to vacate the order of default and judgment. Bankers asserted that it had a strong defense to Prest's claim and that its failure to appear and answer Prest's complaint was due to "mistake, inadvertence and/or excusable neglect." Clerk's Papers at 38. In the motion, counsel for Bankers asserted that the employee of Bankers to whom the summons and complaint had been sent, DiMaggio, had been assigned to a new position prior to service being made on Bankers and that his new duties "[did] not include handling of legal matters or defense of lawsuits." Clerk's Papers at 31. In an affidavit submitted in support of the motion, Bankers's legal coordinator, David Cohen, stated that "[DiMaggio] was absent from that office and on interstate travel during a significant portion of the time the pleading was in the company's possession . . . ." Clerk's Papers at 42. The submission also disclosed that Cohen, the individual at Bankers with responsibility for management and supervision of litigation pending against Bankers, did not receive information regarding this matter until May 28, 1992, at which time he contacted Bankers's outside counsel, Robert Wagner. Wagner's affidavit indicated that Wagner contacted Prest's attorney within "approximately 30 minutes of receipt" of the documents. Clerk's Papers at 44. Finally, Bankers indicated that its defense to Prest's claim for insurance benefits was that there was a material misrepresentation within her insurance application. Clerk's Papers at 96-100.

The trial court granted Bankers's motion and vacated

---

[3]CR 60(b) provides, in relevant part, on motions: "**Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

"(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order[.] "

the default order and judgment. Prest sought review of that decision and we granted it.

## I

█ Prest claims that the trial court erred in granting Bankers's motion. A motion to vacate or set aside a default judgment is addressed to the sound discretion of the trial court. *Leen v. Demopolis*, 62 Wn. App. 473, 478, 815 P.2d 269 (1991) (citing *White v. Holm*, 73 Wn.2d 348, 483 P.2d 581 (1968)), *review denied*, 118 Wn.2d 1022 (1992). A trial court's decision in this regard will not be disturbed on appeal unless the trial court has abused its discretion. *Leen*, 62 Wn. App. at 478. Abuse of discretion means that the trial court exercised its discretion on untenable grounds or for untenable reasons, or that the discretionary act was manifestly unreasonable. *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991); *see also Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984).

█ In exercising its discretion the trial court is called upon to consider whether the moving party has met its burden of showing that: (1) there is substantial evidence to support, at least, a prima facie defense to the claim asserted by the opposing party; (2) the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) the moving party acted with due diligence after notice of entry of the default judgment; and (4) no substantial hardship will result to the opposing party. *White*, 73 Wn.2d at 352.

## A

### Bankers's Defense to Prest's Claim

Prest asserts that the trial court erred in concluding that Bankers met its burden of showing that it had a prima facie defense to her claim. As noted above, Bankers claimed that it was justified in repudiating Prest's claim

for insurance benefits for what Bankers claimed was a material misrepresentation by Prest in her application for insurance.

Prest responds that Bankers was unable to establish that it could maintain such a defense for the reason that the insurance application, the only evidence supporting that defense, is not admissible in evidence. Prest relies upon the provisions of RCW 48.18.080(1) and RCW 48.18.260(1), which provide:

> No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a true copy of the application was attached to or otherwise made a part of the policy when issued and delivered. This provision shall not apply to policies or contracts of industrial life insurance.

RCW 48.18.080(1).

> Subject to the insurer's requirements as to payment of premium, every policy shall be delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance.

RCW 48.18.260(1). Prest claims that Bankers did not present substantial evidence that the insurance policy was delivered to Prest. She reasons, therefore, that the application was inadmissable and that, as a consequence, the trial court erred in concluding that Bankers presented a prima facie defense that a material misrepresentation was made by Prest on her application for insurance.

Prest correctly observes that the trial court based its determination that Bankers had made a showing of a defense on Prest's answer to the question on the insurance application regarding prior back injuries. Therefore, if the insurance application was not admissible because the policy was not delivered to Prest, as Prest asserts, the trial court erred in considering the application as evidence supporting a defense.

█ Bankers claims that it made a sufficient showing that the policy was delivered to Prest, by asserting that it

was Bankers's usual practice to mail and deliver the policy with a copy of the application attached. In that regard, an affidavit presented by Bankers indicated, in part:

2. That the Company's usual and customary practice is to attach a copy of the application to every certificate. More specifically, the practice is as follows:

. . . .

(e) Attach certificate to one application copy (insureds copy). Second application copy is accounts copy.

(f) Send copy of the application (accounts copy), along with insureds set to the account.

Clerk's Papers at 107. In our judgment, this was an insufficient showing that either the application or policy was delivered to Prest. Even if we were to overlook Bankers's assertion that the procedure described above was merely its "usual and customary practice," the fact that Bankers sent the described items "to the account" cannot be said to be substantial evidence that they delivered the application or policy to Prest. Consequently, the trial court erred when it concluded that Bankers made "a strong showing of defense." Partial Report of Proceedings at 3.

## B
### Excusable Neglect

Even if we were to assume that the application was admissible and provided a defense to Prest, we are satisfied, for other reasons, that the motion to vacate should not have been granted. That is so because we agree with Prest that the trial court erred in concluding that Bankers's neglect in failing to answer the complaint was excusable. In reaching its determination, the trial court apparently concluded that Bankers's burden to explain why it failed to answer was of less importance than the requirement it establish a defense. We are satisfied that the *White* requirements are of equal importance and that the trial court was incorrect in concluding otherwise.

■ Here the record shows that Bankers was properly

served on March 20, 1992 when copies of the summons and complaint were served on the insurance commissioner. The insurance commissioner forthwith sent a copy of the legal process to the person designated to receive such process and it was received by someone at Bankers on March 24, 1992. Nevertheless, Bankers failed to answer the complaint within sixty days of the date it was served on the insurance commissioner. Its excuse for failing to answer is that the individual who, according to the records of the Washington Insurance Commissioner, carried the designation of General Counsel had been reassigned to other duties and was out of town at the time the summons and complaint was received at Bankers's offices. This, Bankers indicated, resulted in the file being "mislaid" and a consequent failure to "forward it to the proper personnel in time." Br. of Resp't at 23. While certainly Bankers's failure to answer was neglect, it is not excusable. It is an important part of the business of an insurance company to respond to legal process that is served upon it. If Bankers had designated another individual to receive legal process of this nature, it had a responsibility to notify the state insurance commissioner of the change or make arrangements to have that person's duties assumed by someone else at the company. The failure of Bankers to do either of those things is inexcusable. *See B&J Roofing, Inc. v. Board of Indus. Ins. Appeals*, 66 Wn. App. 871, 832 P.2d 1386 (1992) (error by an employee or corporation in misdirecting a petition for review of administrative decision not excusable neglect). The most that can be said is that Bankers acted with due diligence after it learned that the default judgment had been entered. That does not, however, provide it with a defense or excuse its neglect.

## II

### FEES

Prest claims that she is entitled to attorney fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d

37, 811 P.2d 673 (1991). Under that holding, any insured who enforces payment of coverage by an insurer that has denied coverage is entitled to a reasonable attorney fee. *Olympic S.S. Co.*, 117 Wn.2d at 52. Prest is entitled to fees.

Reversed.

HOUGHTON, A.C.J., and BRIDGEWATER, J., concur.

Reconsideration denied October 10, 1995.

Review denied at 129 Wn.2d 1007 (1996).