[No. 40238-2-I.    Division One.    December 28, 1998.]

Boss Logger, Inc., *Appellant*, v. Aetna Casualty & Surety Company, *Respondent*.

*Timothy R. Gosselin* and *Maureen Falecki* of *Burgess, Fitzer, Leighton & Phillips, P.S.*, for appellant.

*Russell C. Love* of *Thorsrud, Cane & Paulich, Inc., P.S.*, for respondent.

APPELWICK, J. — Boss Logger, Inc. appeals the trial court's Order Granting Relief from Default Judgment to Aetna Casualty and Surety. Because we hold as a matter of law that the insurance policy does not provide Boss Logger the relief it seeks, we affirm the trial court.

## FACTS

Boss Logger was a residential and commercial logging company whose main business was tree removal, trimming, pruning and stump grinding. The owners purchased Commercial Property and Contractor's Equipment insurance

from Aetna Life & Casualty, including Business Income Loss coverage.

Boss Logger used a chipper truck in its daily operations. This was a dump truck with a wood-chipping unit integrally installed on it. On October 12, 1993, the chipper truck was involved in a collision which put the truck and chipper out of commission for 17 days. On October 15, Boss Logger filed a claim with Aetna, seeking coverage for business losses. Aetna denied the claim for business loss, but accepted responsibility for expenses related to transferring the chipper to another vehicle. Boss Logger had already arranged to have the truck repaired, and its vehicle insurer, Leader National, paid the full vehicle damage amount. Despite the fact that the truck was back in service within 17 days, Boss Logger went out of business within three weeks of the collision which had damaged the truck.

Nearly two years later, Boss Logger filed suit against Aetna, seeking the Business Loss policy limits of $250,000, half the value of damages to the truck, and attorneys fees. Aetna did not respond. Five months later Boss Logger obtained an Order of Default and Default Judgment. When Aetna received notice of the default judgment, it filed a Motion for Relief from Default Judgment. The court found that Aetna had a dispositive defense to the insurance coverage claims, vacated the default judgment and dismissed Boss Logger's underlying claim. The court did, however, award Boss Logger $2,750 in attorneys fees for its pursuit of the default motion and judgment. This appeal was timely filed.

## ANALYSIS

■ A trial court's ruling on a motion to vacate a default judgment will not be disturbed on appeal unless the trial court has abused its discretion. *White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1968); *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581-82, 599 P.2d 1289 (1979); *Northwest Adm'rs, Inc. v. Roundy*, 42 Wn. App. 771, 774, 713 P.2d 1127 (1986). Abuse of discretion means that the trial

court exercised its discretion on untenable grounds or for untenable reasons, or that the discretionary act was manifestly unreasonable. *Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990). If the trial court's decision is based upon tenable grounds and is within the bounds of reasonableness, it must be upheld. *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990). Abuse of discretion is less likely to be found if the default judgment is set aside. *White*, 73 Wn.2d at 351-52; *Agricultural & Livestock Credit Corp. v. McKenzie*, 157 Wash. 597, 289 P. 527 (1930).

The standard of review on appeal of a summary judgment order is de novo, with the reviewing court performing the same inquiry as the trial court. *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 854, 827 P.2d 1000 (1992). Even if the facts are not in dispute, if reasonable minds could draw different conclusions, summary judgment is improper. *Chelan County Deputy Sheriffs' Ass'n v. Chelan County*, 109 Wn.2d 282, 295, 745 P.2d 1 (1987). At the hearing on Aetna's Motion to Vacate Default Judgment, both parties agreed that they had fully briefed the coverage issue and that a further hearing on a motion for summary judgment would be unnecessary. The Order of Dismissal should therefore be treated as a decision on summary judgment.

Order Vacating Default Judgment

█ █ A party seeking an order vacating a default judgment must prove four elements: 1) there is substantial evidence supporting a prima facie defense to the claim upon which the court entered default judgment; 2) the moving party's failure to timely appear and answer the claim was due to mistake, inadvertence, surprise or excusable neglect; 3) the moving party acted with due diligence upon notice of entry of the default judgment; and 4) no substantial hardship will result to the opposing party. *White*, 73 Wn.2d at 352; *Hardesty v. Stenchever*, 82 Wn. App. 253, 263, 917 P.2d 577 (1996); *Calhoun v. Merritt*, 46 Wn. App. 616, 619, 731 P.2d 1094 (1986); *Prest v. American Bankers Life Assurance Co.*, 79 Wn. App. 93, 97, 900 P.2d 595 (1995). The four fac-

tors are not weighted equally. *White*, 73 Wn.2d at 352; *Hardesty*, 82 Wn. App. at 266. While the Court of Appeals, Division Two noted in dicta that the *White* requirements are of equal importance, (*Prest*, 79 Wn. App. at 99), this is the minority view among the courts. *See Hardesty*, 82 Wn. App. at 266 (Court's discussion of excusable neglect in *Prest* was dicta because court's holding regarding vacation of default judgment was based on the absence of a prima facie defense.); *Calhoun*, 46 Wn. App. at 619 (Factors 1) and 2) are primary; factors 3) and 4) are secondary). If it clearly appears that a strong defense on the merits exists, the courts will spend scant time inquiring into the reasons which resulted in the entry of the order of default. *White*, 73 Wn.2d at 352; *Suburban Janitorial Servs. v. Clarke Am.*, 72 Wn. App. 302, 305, 863 P.2d 1377 (1993); *Gage v. Boeing Co.*, 55 Wn. App. 157, 163, 776 P.2d 991 (1989); *Yeck v. Department of Labor & Indus.*, 27 Wn.2d 92, 97, 176 P.2d 359 (1947).

▪ Aetna claims a dispositive defense under the terms of the insurance policy. The interpretation of an insurance contract is a matter of law and is reviewed de novo. *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 160, 856 P.2d 1095 (1993). Therefore, this court reviews de novo the trial judge's decision as to this element of the four-part test for vacation of a default order.

Boss Logger asserts that the policy provides business income loss coverage for losses due to the unavailability of the chipper truck. It argues that the Washington Changes Endorsement adds "vehicles" to the list of locations whose suspension of operations triggers business loss coverage. This is a strained reading of the Washington Changes.

The modification upon which Boss Logger relies reads:

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

A. The following is added:

Vehicles

The word "vehicles" as used in this Coverage Part means vehicles running on land or tracks, but not aircraft.

"Commercial Property Coverage Part" includes four sections in addition to the Washington Changes: Commercial Property Conditions, Building and Personal Property Coverage Form, Business and Income Coverage for Commercial Property and Extra Expense, and Cause of Loss. The word "vehicle" occurs in three of those four sections and is not defined in the original policy.

■■ Boss Logger reads the Washington Changes to insert the word "vehicle" into only one paragraph of one of those four sections. No principle of construction compels us to rewrite the policy in this way. Were we to do so, the court could just as easily decide that the word "vehicle" should be inserted into any of the other subsections of the Business Income Coverage section, resulting in differing outcomes, depending on where the word is inserted.

Aetna argues that the "vehicle" endorsement merely provides a definition for the word "vehicle." As evidence that the "vehicle" endorsement cannot be simply a definition but must be substantive, Boss Logger points to the fact that the "vehicle" language in the endorsement is formatted differently than are other definitions, both in the original policy and in the endorsement. The difference is not significant, and the form of the "vehicle" language is far closer to the form of other definitions than to the form of other substantive endorsements.

Boss Logger further argues that in interpreting an insurance clause and its endorsement, the interpretation, in addition to being reasonable, must also take into account the purpose for which the insurance was obtained, citing *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733, 837 P.2d 1000 (1992). *McDonald* does not stand for that proposition. It does, however, provide that insurance policy language must be interpreted in accord with the way it would be understood by the average person. *McDonald*,

119 Wn.2d at 733. Even if this court wished to take into account the purpose for which the insurance was obtained, Boss Logger provides insufficient evidence that the additional vehicle coverage was bargained for. Michael King, owner of Boss Logger, testified that he sought the business loss coverage for his chipper truck, because another vehicle crash the year before had resulted in business losses. However, the language he relies on to create that coverage is included in the Washington Changes, provisions which are added to a policy in compliance with Washington law. Boss Logger concedes that the Business and Income Coverage section standing alone does not provide the coverage it seeks. There is no evidence beyond Mr. King's testimony that this additional vehicle coverage was intended by Boss Logger or agreed to by Aetna. The chipper truck is not covered under the business loss provision. As a matter of law, Aetna's defense on this issue is dispositive.

Boss Logger claims the damage to the chipper truck is covered by the Contractor's Equipment Coverage. Aetna argues that the chipper truck comes within the exclusion for vehicles designed and principally used for transportation.

The brush chipper is listed as covered equipment in the Contractor's Equipment Policy. The vehicle to which it was integrally attached was not. It was the vehicle which was damaged and out of service for 17 days, but this made it impossible to use the chipper. However, within three weeks of their receipt of the original insurance claim, Aetna accepted responsibility for expenses related to transferring the chipper to another vehicle. By then the truck had been repaired and was back in service. Leader National, the company insuring the truck to which the chipper was attached, paid for repair of the truck, completely reimbursing Boss Logger for all damage to the truck.

The Contractor's Equipment Policy provides:

> If you have other insurance covering the same "loss" as the insurance under this policy, we will pay only the excess over what you should have received from the other insur-

ance. We will pay the excess whether you can collect on the other insurance or not.

Whether or not the truck to which the chipper was integrally attached was covered by the Contractor's Equipment Policy, Aetna is not liable for the cost of damages to the truck because Boss Logger has no excess damages to be covered. As a matter of law Aetna has a dispositive defense to Boss Logger's claim under the Contractor's Equipment Policy.

To meet the second prong of the test for vacating a default judgment, Aetna must show its failure to timely respond was due to mistake, inadvertence, surprise or excusable neglect. Boss Logger argues that Aetna's internal policies regarding legal process constitute inexcusable neglect, relying heavily on the court's decision in *Prest*, 79 Wn. App. 93. In *Prest*, the court determined that a party's neglect was inexcusable where the insurer failed to inform the insurance commissioner of the correct person to receive service of pleadings. *Prest*, 79 Wn. App. at 100. It must be noted, however, that the *Prest* court had already determined that the insurer had no defense to the plaintiff's claim prior to its discussion of inexcusable neglect. *Prest*, 79 Wn. App. at 99. Unlike the insurer in *Prest*, Aetna's failure to respond was not a systemic failure which would prevent all litigants from achieving actual notice to the insurer. Aetna's litigation policy manual provides a checklist for litigation, including a requirement of follow-up with counsel assigned to cases to ensure counsel responsibility for cases. In fact, the correct person received the Petition. The system itself was not flawed, but someone in the process lost the papers. The trial court's determination that this was a mistake, and not inexcusable neglect, was therefore not an abuse of discretion.

Aetna meets the third prong of the test, which requires that the moving party acted with due diligence upon notice of the default. Counsel for Aetna appeared by telephone eight days after first receiving notice of the default judgment, after the person responsible for legal service returned

from vacation. Aetna filed its Motion to Vacate the default judgment six days after that. A total of two weeks passed between the time Aetna received notice and the filing of its Motion to Vacate. Given the complexity of arguing Aetna's defense to the claim (a required element of the Motion to Vacate), the trial judge's determination that Aetna exercised due diligence upon receiving notice of the default judgment is not an abuse of discretion.

To meet the fourth prong of the test, Aetna must prove that vacation of the default order and judgment will not cause Boss Logger to suffer substantial hardship. Boss Logger ceased operations by mid-November, 1993. It did not file suit against Aetna until October 11, 1995. Some of this delay was due to Boss Logger's difficulty in finding counsel. However, any delay-related damage was already incurred by the time Boss Logger filed suit, two years after they closed their business. The trial judge noted that the case had been individually calendared and that the original date for trial had not yet passed by the time of the hearing on the Motion to Vacate. The trial court's determination that Boss Logger suffers no substantial hardship from vacation of the judgment was thus not an abuse of discretion.

Order Dismissing Boss Logger's Claim

At the hearing on the Motion for Vacation of Judgment, the parties agreed that the court's decision on the insurance coverage issues would be treated as a summary judgment decision. As discussed above, as a matter of law the insurance policy does not provide coverage upon which Boss Logger can maintain its claim. The Order of Dismissal was therefore proper.

Attorneys Fees

■ While the trial court vacated the default judgment and dismissed Boss Logger's claims, the court nonetheless awarded Boss Logger attorneys fees in the amount of $2,750 incurred in pursuing it's Motion for Default and Default Judgment. We review the reasonableness of an

award of attorney fees under the abuse of discretion standard. *Progressive Animal Welfare Soc'y v. University of Wash.*, 114 Wn.2d 677, 688, 790 P.2d 604 (1990); *State Farm Mut. Auto. Ins. Co. v. Johnson*, 72 Wn. App. 580, 595, 871 P.2d 1066 (1994). The trial court's award of fees to Boss Logger was not an abuse of discretion.

█ Boss Logger also seeks attorneys fees for the Motion to Vacate and Order of Dismissal below, as well as fees on appeal, pursuant to *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). However, attorneys fees under *Olympic S.S.* are available only when the insured prevails. *Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 961 P.2d 358 (1998); *Greengo v. Public Employees Mut. Ins. Co.*, 135 Wn.2d 799, 959 P.2d 657 (1998); *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 147, 930 P.2d 288 (1997). Boss Logger is entitled only to the attorneys fees awarded below. Neither party is awarded fees on appeal. The judgment is affirmed.

BAKER and BECKER, JJ., concur.