101 P.3d 867 (2004)
Cheryl SHOWALTER, Appellant,
v.
WILD OATS d/b/a Nature's Grocery, Respondent.
No. 30998-0-II.
Court of Appeals of Washington, Division 2.
October 26, 2004.
Publication Ordered November 30, 2004.
*868 Craig Frazier Schauermann, Attorney at Law, Vancouver, WA, for Petitioner.
William R Hickman, Attorney at Law, Seattle, WA, for Other Party.
Donald Arrington Greig, Landerholm Law Office, for Respondent.
VAN DEREN, J.
Cheryl Showalter appeals the trial court's order vacating her default judgment against Wild Oats Markets, Inc. (Wild Oats) on her personal injury claim. Showalter contends that the trial court erred because Wild Oats' motion to set aside the default judgment failed to demonstrate a prima facie defense and excusable neglect. Holding that the trial court did not abuse its discretion under the facts here, we affirm.

FACTS
Showalter filed a personal injury complaint against Wild Oats in April 2003. Wild Oats has retail grocery stores in 23 states, including Nature's Marketplace in Vancouver, Washington.[1] Showalter's lawsuit alleged that she slipped on a snow pea pod and suffered serious injuries in Nature's Marketplace on August 10, 2001, and that the store was negligent for failing to remove this debris.
Before the lawsuit was filed, Showalter attempted to negotiate a settlement with Wild Oats' outside claims administrator and upon filing the lawsuit Showalter's counsel mailed a "courtesy copy" of the summons and complaint to the outside claims administrator, who was not Wild Oats' registered agent. On April 14, 2003, Wild Oats' registered agent in Olympia, Washington, was properly served. The registered agent forwarded the pleadings to Wild Oats' legal department, which received them on April 21, 2003.
Upon the receipt of a complaint alleging personal injury, Wild Oats' protocol is to have the legal department forward the served papers to an internal claims administrator in the safety and risk department. The internal claims administrator notifies the outside claims administrator of the lawsuit, and the outside claims administrator hires *869 local defense counsel. Here, the paralegal gave Showalter's summons and complaint to the manager of the safety and risk department, who happened to be near the paralegal's office at the time she prepared the papers for forwarding to the internal claims administrator. The paralegal routinely gave the manager copies of lawsuits for informational purposes only; however, in this instance she asked the manager to give the internal claims administrator Showalter's served summons and complaint. The manager misunderstood the paralegal and did not give them to the internal claims administrator. Consequently, Wild Oats did not timely file an answer to Showalter's complaint.
On May 7, 2003, twenty four days after the date of service, Showalter obtained a default order against Wild Oats, and on June 3, 2003, she obtained a default judgment against Wild Oats for over $28,000.
Wild Oats learned of the default and judgment for the first time on June 23, 2003, when Showalter's counsel sent a letter demanding payment and a copy of the default judgment to the outside claims administrator. About 10 days later, Wild Oats filed a motion to vacate the default judgment. Wild Oats' motion included declarations from the company's paralegal, the manager of the safety and risk department, and the outside claims administrator to support its proposed affirmative defenses, in addition to stipulated terms that it pay reasonable attorney fees to Showalter's attorney for the default proceedings.
The trial court held a hearing and granted Wild Oats' motion to vacate the default judgment under CR 60(b)(1). The trial court's order also certified immediate review under RAP 2.3(b)(4). After briefing by both sides, the court commissioner granted discretionary review.

ANALYSIS

I. MOTION TO VACATE DEFAULT JUDGMENT

A. Standard of Review
Default judgments are generally disfavored in Washington based on an overriding policy which prefers that parties resolve disputes on the merits. See, e.g. Griggs v. Averbeck Realty, Inc., 92 Wash.2d 576, 581, 599 P.2d 1289 (1979). We review a trial court's ruling on a motion to vacate a default judgment for an abuse of discretion. In Re Estate of Stevens, 94 Wash.App. 20, 29, 971 P.2d 58 (1999). A trial court abuses its discretion by issuing a manifestly unreasonable or untenable decision. Stevens, 94 Wash.App. at 29, 971 P.2d 58. Accordingly, if a trial court's ruling "`is based upon tenable grounds and is within the bounds of reasonableness, it must be upheld.'" Stevens, 94 Wash.App. at 30, 971 P.2d 58 (quoting Lindgren v. Lindgren, 58 Wash.App. 588, 595, 794 P.2d 526 (1990)).
Our primary concern is that a trial court's decision on a motion to vacate a default judgment is just and equitable. Calhoun v. Merritt, 46 Wash.App. 616, 619, 731 P.2d 1094 (1986). The trial court must balance the requirement that each party follow procedural rules with a party's interest in a trial on the merits. See Johnson v. Cash Store, 116 Wash.App. 833, 841, 68 P.3d 1099, review denied, 150 Wash.2d 1020, 81 P.3d 120 (2003) ("Justice is not done if hurried defaults are allowed, but neither is it done if continuing delays are permitted."). Consequently, we evaluate the trial court's decision by considering the unique facts and circumstances of the case before us. Calhoun, 46 Wash.App. at 619, 731 P.2d 1094. And we are less likely to reverse a trial court decision that sets aside a default judgment than a decision which does not. Colacurcio v. Burger, 110 Wash.App. 488, 494-95, 41 P.3d 506 (2002), review denied, 148 Wash.2d 1003, 60 P.3d 1211 (2003) (relying on Griggs, 92 Wash.2d at 581, 599 P.2d 1289).

B. Wild Oats' Motion to Vacate Default Judgment
When reviewing a motion to vacate a default judgment, the trial court determines whether the movant has demonstrated four factors:[2]

*870 The primary factors are: (1) the existence of substantial evidence to support, at least prima facie, a defense to the claim asserted; (2) the reason for the party's failure to timely appear, i.e., whether it was the result of mistake, inadvertence, surprise or excusable neglect. The secondary factors are: (3) the party's diligence in asking for relief following notice of the entry of the default; and (4) the effect of vacating the judgment on the opposing party.
Calhoun, 46 Wash.App. at 619, 731 P.2d 1094 (relying on White v. Holm, 73 Wash.2d 348, 352, 438 P.2d 581 (1968)); see also CR 55(c)(1); CR 60(b)(1).
Because Wild Oats and Showalter dispute the two primary factors only, we review Wild Oats' defense to Showalter's personal injury claim and the reason for Wild Oats' failure to timely appear.

1. Wild Oats' Defense
Wild Oats contends that it demonstrated a strong defense to Showalter's personal injury claim and that its failure to appear was an unintended mistake. Showalter concedes that "Wild Oats may have a `prima facie' defense," but argues that the evidence does not rise to a strong defense and that Wild Oats' failure to appear constitutes inexcusable neglect. Br. of Appellant at 18.
A grocery store is liable for unsafe conditions on the premises that are reasonably foreseeable. Pimentel v. Roundup Co., 100 Wash.2d 39, 49, 666 P.2d 888 (1983). In the procedural posture of a motion to vacate, the trial court determines whether substantial evidence exists for a prima facie defense by reviewing the moving party's evidence and reasonable inferences in the light most favorable to the movant. Pfaff v. State Farm Mutual Auto. Ins. Co., 103 Wash.App. 829, 834, 14 P.3d 837 (2000). Significantly, the trial court does not act as a trier of fact in a hearing on a motion to vacate; thus, the court cannot conclusively determine which parties' facts control. Pfaff, 103 Wash.App. at 834, 14 P.3d 837.
It is well settled that "[i]f a `strong or virtually conclusive defense' is demonstrated, the court will spend little time inquiring into the reasons for the failure to appear and answer, provided the moving party timely moved to vacate and the failure to appear was not willful." Cash Store, 116 Wash.App. at 841, 68 P.3d 1099 (quoting White, 73 Wash.2d at 352, 438 P.2d 581).
Here, Showalter's complaint alleged that Wild Oats failed to exercise reasonable care by not "prevent[ing] material from being placed on its floor ahead of its checkstands." Clerk's Papers (CP) at 4. Showalter claimed numerous past, present, and future damages as a result of injuries from allegedly slipping on a pea pod in the checkout line, including medical expenses, mental and emotional distress, loss of earnings, and pain and suffering.
Showalter's affidavit in support of her complaint states that her fall caused injuries to her "right leg, right arm, middle back and neck." CP at 21. Her affidavit also included general statements such as "[m]y symptoms over that period of time gradually abated, however they did not completely end. I continue to have leg pain and spinal stiffness, particularly with activities." CP at 21.
Wild Oats' motion to vacate contained the affirmative defenses of contributory negligence, preexisting injury, and exercise of reasonable care. Declarations of Wild Oats' outside claims manager who investigated Showalter's claims and Wild Oats' safety and risk manager stated that: (1) employees swept the floor at the location of the alleged slip 20 minutes before the slip is alleged to have occurred; (2) Nature's Marketplace had no reports of, nor had store personnel observed, any unsafe or hazardous condition or any foreign materials on the floor in the area where plaintiff reported her slip; and (3) Wild Oats' and Nature's Marketplace's policy was to sweep floors at regular intervals and remove any reported or observed debris.
*871 Wild Oats' memorandum supporting its motion to vacate emphasized that Showalter's affidavit also stated that she "had past medical treatment for asthma, hypertension and depression/anxiety disorder" and had "prior chiropractic treatment for injuries incurred in an automobile accident in 1997" and saw an additional doctor for spinal injuries in 1999. CP at 63.
Showalter's default judgment award was over $28,000. But the majority of this award, $25,000, was for past and future non-economic damages based on her doctors' diagnosis and affidavit.
Without weighing the evidence, the foregoing facts, considered in the light most favorable to Wild Oats, demonstrate that Wild Oats can assert substantial evidence of a prima facie defense to Showalter's personal injury claim. Wild Oats' declarations specifically demonstrate key issues regarding foreseeability of the risk to Showalter at the time of the incident, the existence of similar preexisting injuries, and persuasively challenge the amount of damages for past and future non-economic loss.
Showalter fails to meaningfully reply to this evidence. She emphasizes that her fall occurred in the plain view of other employees and asserts that Wild Oats' policy of removing debris from the floor was not followed; however, she provides no evidence to contradict the inferences contained in Wild Oats' declarations and the record.

2. Wild Oats' Failure to Answer
Because Wild Oats demonstrated substantial evidence of a prima facie defense to Showalter's claims, we review the reason for Wild Oats' untimely appearance in the litigation. The record demonstrates that Wild Oats' failure to timely answer Showalter's complaint was a mistake, the result of a misunderstanding, and excusable neglect, not a willful intent to ignore the lawsuit.
Declarations of Wild Oats' paralegal and the safety and risk manager verify that the manager routinely receives copies of summons and complaints for informational purposes only. The manager is not expected to give them to the internal claims administrator who contacts an outside claims administrator who hires local defense counsel. In this instance, the manager misunderstood the paralegal's request to forward the summons and complaint to the internal claims administrator, which was a request contrary to Wild Oats' customary business practice. Consequently, the outside claims administrator did not hire counsel to defend against Showalter's lawsuit.
Both the paralegal and manager of the safety and risk department emphasize that this misunderstanding was inadvertent and that they did not intentionally fail to respond to Showalter's lawsuit.[3] And the paralegal's declaration demonstrates that, "As a result of this case, internal procedures have been changed so that [manager of the safety and risk department] is never to receive any original copies of suit papers, and they are to be automatically forwarded personally to [internal claims administrator], no matter what." CP at 51 (emphasis in original).
Showalter does not persuasively respond to these facts and relies on distinguishable legal authority involving defendants who failed to establish a prima facie defense, stronger evidence of inexcusable neglect that was also willful, or were not diligent. See Cash Store, 116 Wash.App. at 848, 68 P.3d 1099; Hwang v. McMahill, 103 Wash.App. 945, 952, 15 P.3d 172 (2000); Stevens, 94 Wash.App. at 31, 35, 971 P.2d 58; Prest v. Am. Bankers Life Assurance Co., 79 Wash.App. 93, 99, 900 P.2d 595 (1995). And the circumstances surrounding the misunderstanding between Wild Oats' staff are more akin to a mistake than inexcusable neglect. Pfaff, 103 Wash.App. at 831, 836, 14 P.3d 837; Norton v. Brown, 99 Wash.App. 118, 124, 126, 992 P.2d 1019 (1999).
*872 Further, given the equitable nature of a motion to vacate, reversing the trial court's order under these circumstances would unjustly deny Wild Oats a trial on the merits because it can assert substantial evidence of a defense to both liability and damages. A trial allows both parties to fully explore Showalter's personal injury claim, to evaluate the testimony of Nature's Marketplace employees and customers who were present near the time of the incident, and to review expert opinions and reports from both Wild Oats' and Showalter's physicians about Showalter's injuries. Finally, we uphold a trial court decision here that is reasonable under all of the circumstances, and more favorably review a trial court decision that vacates a default judgment.[4]
In sum, Wild Oats has shown the ability to assert substantial evidence of a prima facie defense, the failure to answer was a mistake and excusable neglect, and the equities here require a trial on the merits. The parties do not dispute that Wild Oats satisfies the secondary factors relevant to a motion to vacate proceeding. We therefore hold that the trial court did not abuse its broad discretion when it set aside Showalter's default judgment. Accordingly, we affirm.
We concur: ARMSTRONG, P.J., and HUNT, J.
NOTES
[1] Showalter's lawsuit erroneously identifies Nature's Marketplace as Nature's Grocery. Here, we reference the store by its official name, Nature's Marketplace.
[2] Showalter erroneously contends that these four factors are of equal weight and importance, relying on dicta in Prest v. Am. Bankers Life Assurance Co., 79 Wash.App. 93, 99, 900 P.2d 595 (1995). See Boss Logger, Inc. v. Aetna Cas. & Sur. Co., 93 Wash.App. 682, 686, 970 P.2d 755 (1998).
[3] See CP at 51 (paralegal declaration) ("This is the first, and only, time that I am aware of that a Complaint has been `lost' by Wild Oats .... [w]hat happened in this case is an unfortunate error based on miscommunication between [manager of the safety and risk department] and myself."); CP at 55 (declaration of manager of the safety and risk department) ("It was never the intention of the company to ignore Ms. Showalter's lawsuit or to not appear and contest her claim.").
[4] Alternatively, Wild Oats contends that the default judgment is void because its efforts to negotiate a settlement with Showalter constituted an informal appearance under Batterman v. Red Lion Hotels, Inc., 106 Wash.App. 54, 62-63, 21 P.3d 1174 (2001). But we do not review this argument because a party's appearance is a factual question that rests with the trial court; here, the trial court did not make an appearance finding under CR 55(a)(3). Colacurcio v. Burger, 110 Wash.App. 488, 497, 41 P.3d 506 (2002), review denied, 148 Wash.2d 1003, 60 P.3d 1211 (2003). But we note that we broadly define appearance under CR 55 and the dispositive inquiry is whether a defendant's actions demonstrate an intent to defend the plaintiff's claims. Batterman, 106 Wash.App. at 62-63, 21 P.3d 1174; Ellison v. Process Sys. Inc. Constr. Co., 112 Wash.App. 636, 643, 50 P.3d 658 (2002), review denied, 148 Wash.2d 1021, 66 P.3d 637 (2003). The record demonstrates that Wild Oats engaged in settlement negotiations with both Showalter individually and her counsel for numerous months before she filed her lawsuit. The record also indicates that Wild Oats intended to defend against Showalter's personal injury claim. Thus, Wild Oats' informal appearance argument appears persuasive.