[No. 39169-4-II.    Division Two.    May 25, 2010.]

Puget Sound Medical Supply, *Appellant*, v. The Department of Social and Health Services, *Respondent*.

366

*Kevin T. Steinacker* and *Thomas L. Dickson* (of *Dickson Steinacker LLP*) and *Brett R. Beetham* (of *Beetham/Tran Law Firm PLLC*), for appellant.

*Robert M. McKenna, Attorney General,* and *Angela Coats McCarthy, Assistant,* for respondent.

¶1 VAN DEREN, C.J. — Puget Sound Medical Supply appeals the Department of Social and Health Services Board of Appeals' (BOA) denial of Puget Sound Medical Supply's request for review of an initial order directing it to repay the state for Medicaid overpayments it received from the Department of Social and Health Services (DSHS). Puget Sound Medical Supply (PSM) argues that the BOA erred in finding that PSM had no good reason for filing the request one day late. We affirm.

## FACTS

¶2 PSM supplies medical equipment to Washington State Medicaid patients and is reimbursed by DSHS. On November 17, 2003, DSHS audited PSM's records, determined that it had overpaid PSM, and demanded repayment.

¶3 PSM appealed DSHS's demand to the Office of Administrative Hearings, which, on December 24, 2007, entered and mailed an initial order in favor of DSHS. The order stated: "THIS ORDER BECOMES FINAL ON THE DATE OF MAILING UNLESS WITHIN 21 DAYS OF MAILING OF THIS ORDER A PETITION FOR REVIEW IS RECEIVED BY THE DSHS BOARD OF APPEALS." Clerk's Papers (CP) at 8. PSM's counsel received the order on December 26, 2007.

¶4 PSM filed a request for review of the initial order with the BOA on the morning of January 15, 2008, the day after the 21 day deadline to file a petition for review expired. The BOA issued PSM a "Notice of Late Request for Review and Deadline to Give Explanation." CP at 14. In response, on January 29, 2008, PSM submitted a "Memorandum Re: Good

Cause for Late Petition" to the BOA. CP at 14. The BOA denied PSM's petition for review, citing former WAC 388-02--0580 (2002)[1] and concluding that PSM failed to provide a good reason for its late filing. PSM then filed a "Petition for Reconsideration of the Review Decision," which the BOA also denied. CP at 6.

¶5 PSM unsuccessfully appealed the BOA's order denying review to superior court.

¶6 PSM appeals.

## ANALYSIS

I. STANDARD OF REVIEW

¶7 PSM argues that because the BOA erroneously interpreted the statutory phrase " 'good reason,' " we should review the BOA's order de novo, under an error of law standard. Br. of Appellant at 8 (quoting former WAC 388--02-0580(3)(b)). DSHS argues that, because the BOA exercised its discretion "to accept a late appeal if the appellant demonstrates a good reason" for untimely filing, we should review the BOA's order for an abuse of discretion. Br. of Resp't at 6. We agree with PSM on the applicable standard of review.

¶8 When the BOA denied PSM's petitions for review and reconsideration, it based its decision on the statutory con-

---

[1] Former WAC 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 (2002) provides:

What is the deadline for requesting review [by a review judge]? (1) BOA must receive the written review request on or before the twenty-first calendar day after the initial order was mailed.

(2) A review judge may extend the deadline if a party:

(a) Asks for more time before the deadline expires; and

(b) Gives a good reason for more time.

(3) A review judge may accept a review request after the twenty-one calendar day deadline only if:

(a) The BOA receives the review request on or before the thirtieth calendar day after the deadline; and

(b) A party shows good reason for missing the deadline.

(Boldface omitted.)

struction of the phrase "good reason," concluding that PSM "failed to provide a good reason for its late [filing]." CP at 25. Because statutory construction is a question of law, *City of Pasco v. Pub. Emp't Relations Comm'n,* 119 Wn.2d 504, 507, 833 P.2d 381 (1992), we review the BOA's order de novo under the error of law standard, which permits us to substitute our interpretation of the law for that of the BOA. *See Haley v. Med. Disciplinary Bd.,* 117 Wn.2d 720, 728, 818 P.2d 1062 (1991).

¶9 We accord "great weight" to the statutory interpretation of the executive agency charged with a statute's enforcement. *Glaubach v. Regence BlueShield,* 149 Wn.2d 827, 834, 74 P.3d 115 (2003). But the agency's interpretation is not conclusive because "it is ultimately for the court to determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law." *Overton v. Econ. Assistance Auth.,* 96 Wn.2d 552, 555, 637 P.2d 652 (1981).

¶10 When we review an administrative agency's action, we sit in the same position as the superior court and apply the standards of the Administrative Procedure Act[2] directly to the record before the agency. *Tapper v. Emp't Sec. Dep't,* 122 Wn.2d 397, 402, 858 P.2d 494 (1993). PSM bears the burden of demonstrating that the BOA "erroneously interpreted or applied the law." *Grabicki v. Dep't of Ret. Sys.,* 81 Wn. App. 745, 750, 916 P.2d 452 (1996).

II. FORMER WAC 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(3)

¶11 PSM argues that the BOA erred in concluding that "good reason" is not synonymous with "good cause." Br. of Appellant at 9. DSHS previously admitted that the definition of "good cause" in chapter 388-02 WAC is "instructive" about the definition of "good reason" and seems to maintain this position in its brief. CP at 18. But the BOA noted that it does not "presume" the phrases are synonymous because "[a]lthough several other rules in chapter 388-02 WAC refer

___

[2] Ch. 34.05 RCW.

to 'good cause,' the drafters of [former] WAC 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(2) chose to use the 'good reason' standard instead" and "[i]f the drafters . . . believed that [the phrases were] synonymous . . . then [they] would not have used different terms in different rules." CP at 24-25, 10.

¶12 Former WAC 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(3)[3] used the phrase "good reason" but chapter 388-02 WAC did not define it. *See* WAC 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. We find no reported cases defining this phrase. Thus, we construe this phrase and apply it as a matter of first impression.

■■■ ¶13 Our obligation is to give effect to the legislative intent behind the statute we construe. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). We give undefined statutory phrases their usual and ordinary meaning. *Nationwide Ins. v. Williams*, 71 Wn. App. 336, 342, 858 P.2d 516 (1993). Because one can reasonably interpret "good reason" in more than one way,[4] we hold that the phrase is ambiguous. *See Am. Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004).

■■ ■■ ¶14 If a statute is ambiguous, we look to other sources of legislative intent. *State v. Bash*, 130 Wn.2d 594, 601, 925 P.2d 978 (1996). We determine legislative intent from the language of the act as a whole in terms of its object and purpose. *Strenge v. Clarke*, 89 Wn.2d 23, 29, 569 P.2d 60 (1977). We derive the construction of a statutory phrase from an interpretation given to that phrase in other statutes,

---

[3] Former WAC 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(3) provides, "A review judge may accept a review request after the twenty-one calendar day deadline only if: (a) The BOA receives the review request on or before the thirtieth calendar day after the deadline; and (b) A party shows good reason for missing the deadline."

The BOA incorrectly states that the "rule at issue in this case" is former WAC 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(2). CP at 24. Former WAC 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(2) provided, "A review judge may extend the deadline if a party: (a) Asks for more time *before the deadline expires*; and (b) Gives a good reason for more time." (Emphasis added.) Here, PSM made no attempt to ask for more time before the 21 day deadline expired. And PSM submitted a "Memorandum Re: Good Cause for Late Petition" to the BOA only after the BOA issued a "Notice of Late Request for Review and Deadline to Give Explanation." CP at 14.

[4] For example, the petitioner's own disorganization and incompetence may be a "good reason" for delayed filing in the subjective view of the petitioner. But such a reason may not be "good" in the objective view of a reasonable person.

provided those other statutes are in pari materia[5] with the statute construed, *Whitehead v. Dep't of Soc. & Health Servs.*, 92 Wn.2d 265, 267, 595 P.2d 926 (1979), to the end that a harmonious total schema maintains the integrity of both statutes. *Beach v. Bd. of Adjustment of Snohomish County*, 73 Wn.2d 343, 346, 438 P.2d 617 (1968). The *Beach* court held that a zoning statute relating to certiorari and a statute relating generally to certiorari[6] were in pari materia with each other because "both statutes speak directly to the necessity for a record." 73 Wn.2d at 346.

¶15 Here, two DSHS regulations are in pari materia with former WAC 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(3) and its use of the phrase "good reason." The first regulation, WAC 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—regarding continuances of prehearing conferences with the administrative law judge (ALJ)—states, "If the parties agree to a continuance, the ALJ grants it unless the ALJ finds that *good cause* for continuance does not exist." WAC 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(3)(a) (emphasis added). The second regulation, WAC 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—regarding vacating an ALJ's order of dismissal—states, "[A petitioner] may make a late request to vacate the order of dismissal . . . but [the petitioner] must show *good cause* according to WAC 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 for the late request to be accepted and the dismissal to be vacated." WAC 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(2) (emphasis added). Both regulations appear under the same title and chapter as former WAC 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(3), involve the same agency, and "speak directly" to the criteria for considering agency action after an original deadline has expired. *Beach*, 73 Wn.2d at 346. Thus, we derive the meaning of "good reason" from the phrase "good cause" as it is used in the same statutory "schema" of chapter 388-02 WAC. *Beach*, 73 Wn.2d at 346.

---

[5] The definition of "in pari materia" is "[o]n the same subject; relating to the same matter." BLACK'S LAW DICTIONARY 862 (9th ed. 2009).

[6] The two statutes were RCW 7.16.070 and RCW 36.70.900. RCW 7.16.070 provides, "The writ of review must command the party to whom it is directed to certify fully to the court issuing the writ . . . a transcript of the record and proceedings . . . that the same may be reviewed by the court." RCW 36.70.900 provides, "[T]he board of adjustment . . . shall, in making an order, requirement, decision or determination, include in a written record of the case the findings of fact upon which the action is based."

¶16 PSM argues that RCW 50.32.075[7] is sufficiently analogous to former WAC 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 to assist us in construing "good cause." But RCW 50.32.075 deals with appeals for unemployment compensation cases. Furthermore, RCW 50.32.075 was enacted by the legislature, while former WAC 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 was a hearing rule promulgated by DSHS. *See Kabbae v. Dep't of Soc. & Health Servs.*, 144 Wn. App. 432, 443, 192 P.3d 903 (2008). As such, we hold that RCW 50.32.075 is not in pari materia with former WAC 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, as the legislature and DSHS could not have intended to tie a statute applicable to appeals in unemployment compensation cases and an agency regulation dealing with appeals in DSHS administrative hearings into "a harmonious total schema." *Beach*, 73 Wn.2d at 346. Instead, we rely on the use of "good cause" in the two DSHS hearing regulations, WAC 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 and WAC 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, which are in pari materia with former WAC 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(3).

III. WAC 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(1) AND CR 60(b)

¶17 The phrase "good cause," which appears in both WAC 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 and WAC 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 is defined in WAC 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(1):

Good cause is a substantial reason or legal justification for failing to appear, to act, or respond to an action. To show good cause, the ALJ must find that a party had a good reason for what they did or did not do, using the provisions of Superior Court Civil Rule 60 as a guideline.

"Good cause" may include, but is not limited to, the following examples: "You ignored a notice because you were in the hospital or were otherwise prevented from responding;

---

[7] RCW 50.32.075 provides, "For good cause shown the appeal tribunal or the commissioner may waive the time limitations for administrative appeals or petitions set forth in the provisions of this title."

or . . . [y]ou could not respond to the notice because it was written in a language that you did not understand." WAC 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(2). Under CR 60, a court may "relieve a party . . . from a final . . . order . . . for . . . [m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a[n] . . . order." CR 60(b)(1); *see also White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968).

¶18 PSM provided the following reasons for its late filing:

> (1) [R]esponse date not calendared because office staff was out of the office for the holidays; (2) short deadline (10 working days) to decide whether to appeal after receipt of the Initial Decision; (3) lead attorney left the firm; (4) difficulty contacting an expert witness; (5) possibility that the Department would seek to supplement hearing record; (6) Initial Decision arrived earlier than expected.

CP at 21.

¶19 PSM's reasons do not fall under the two examples for "good cause" provided in WAC 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(2). Because this regulation does not limit "good cause" to only these examples, we follow the regulatory mandate to "us[e] the provisions of Superior Court Civil Rule 60 as a guideline" to analyze PSM's reasons. WAC 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(1). The parties only consider "excusable neglect" as the relevant "reason[ ]" under CR 60.[8] CR 60(b)(1).

¶20 Washington courts have found "excusable neglect"[9] when (1) an alleged tortfeasor acted with due diligence but

---

[8] CR 60(b)(11) contains another provision under which PSM could claim "good reason": "Any other reason justifying relief from the operation of the judgment." But "CR 60(b)(11) applies sparingly to situations 'involving extraordinary circumstances not covered by any other section of the rules.' " *In re Marriage of Knutson*, 114 Wn. App. 866, 872-73, 60 P.3d 681 (2003) (internal quotation marks omitted) (quoting *In re Marriage of Irwin*, 64 Wn. App. 38, 63, 822 P.2d 797 (1992)).

[9] Generally, to prevail under a CR 60(b)(1) motion to vacate, PSM must show that (1) it has a prima facie defense to DSHS's claims, (2) it failed to timely file for review because of "excusable neglect," (3) it acted with due diligence after discovering the judgment, and (4) DSHS would not experience substantial hardship if the court vacated the judgment. *See Pfaff v. State Farm Mut. Auto. Ins. Co.*, 103 Wn. App. 829, 832, 14 P.3d 837 (2000). It is not clear from the language of WAC 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(2)

the victims' counsel attempted to conceal the existence of the litigation, *Morin v. Burris*, 160 Wn.2d 745, 759, 161 P.3d 956 (2007), and (2) a plaintiff served summons and complaint on a defendant but did not file them, defendant served a timely answer, and plaintiff obtained default judgment by serving a nearly identical complaint three months later that defendant failed to answer. *C. Rhyne & Assocs. v. Swanson*, 41 Wn. App. 323, 327, 704 P.2d 164 (1985).

¶21 On the other hand, Washington courts have "repeatedly held that if a company's failure to respond to a properly served summons and complaint was due to a breakdown of internal office procedure, the failure was not excusable." *TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc.*, 140 Wn. App. 191, 212, 165 P.3d 1271 (2007). For example, Washington courts have found no "excusable neglect" when (1) an insurer failed to answer the complaint because the insurer misplaced a copy of the legal process sent by the insurance commissioner when the person designated to receive process was reassigned to other duties, *Prest v. Am. Bankers Life Assurance Co.*, 79 Wn. App. 93, 100, 900 P.2d 595 (1995); (2) an employee at an attorney general's office failed to timely route documents to the responsible attorney because of inadequate office procedures to " 'catch[ ]' " administrative errors, *Beckman v. Dep't of Soc. & Health Servs.*, 102 Wn. App. 687, 695-96, 11 P.3d 313 (2000); (3) someone other than general counsel accepted service of process and then neglected to forward the complaint, *Johnson v. Cash Store*, 116 Wn. App. 833, 848-49, 68 P.3d 1099 (2003); (4) a legal assistant responsible for entering the deadline into the calendaring system did so before she left on an extended vacation but failed to ensure that employees hired to replace her were trained on the

whether we are to apply all of these elements in deriving guidance from CR 60 on the meaning of "good cause." The parties are silent on this issue. They have not provided the record before the Office of Administrative Hearings to allow us to consider whether PSM has a prima facie defense to DSHS's claim for repayment. In any event, because we hold that PSM cannot show "excusable neglect," an essential element for a CR 60(b)(1) motion to vacate, we do not address the remaining elements.

calendaring system and competent in operating it and failed to institute any other procedures necessary to ensure that general counsel received notice of the dispute. *TMT Bear Creek*, 140 Wn. App. at 213.

¶22 Two of PSM's reasons for the late appeal—the "response date [was] not calendared because office staff was out for the holidays," and its "lead attorney left the firm"—directly relate to its own failure to set in place organizational procedures that ensure that changes in personnel and routine holidays do not disrupt daily business. CP at 21. Accordingly, they do not constitute grounds for "excusable neglect."

¶23 PSM also offers as "good reason[s]" the "short deadline" of 10 working days and the early arrival of the initial order. CP at 21. These two reasons directly relate to the length of time addressed by the notice on the order about the deadline to file an appeal. PSM provides no authority that intervening routine holidays affect an established filing period to appeal an order or that they can serve as the basis for "excusable neglect." Further, even though the ALJ stated that "he did not anticipate mailing his decision before January 2008," PSM should not have relied on this statement. CP at 24. In light of the need for "a responsive and responsible system which mandates compliance with judicial summons," we hold that PSM's reasons relating to the statutorily-imposed deadline are not grounds for "excusable neglect." *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979).

¶24 PSM also states that it had "difficulty contacting an expert witness." CP at 21. But this reason is apparently based on the fact that PSM had to meet a "short" deadline while afflicted by shortcomings in its internal organization. CP at 21. Because we hold that a statutorily-imposed deadline and internal organizational failings do not constitute "excusable neglect," the consequential difficulty in contacting the expert witness also does not constitute "excusable neglect."

¶25 PSM also posits the "possibility that the Department would seek to supplement the [hearing] record" as a "good reason" for filing a late appeal. But, on January 3, 2008, DSHS mailed a letter to PSM stating that it was not requesting to reopen the record. PSM provides no authority to support the proposition that the possibility that an opposing party may choose to supplement the record in ongoing litigation provides excusable neglect for the other party's delay.

¶26 We also note that PSM was not diligent in "compl[ying] with judicial summons," because, even though WAC 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(2) afforded PSM the opportunity to request additional time before the deadline expired, it did not attempt to do so. *Griggs*, 92 Wn.2d at 581. "Excusable neglect" may be found if the tardy party acted diligently despite the circumstances constituting "excusable neglect." *See Morin*, 160 Wn.2d at 750-51. Because PSM did not attempt to seek additional time when it had the opportunity to do so, we hold that PSM's reasons are not grounds for "excusable neglect."

¶27 PSM cites to *Luckett v. Boeing Co.*, 98 Wn. App. 307, 989 P.2d 1144 (1999) and *Dalton v. State*, 130 Wn. App. 653, 124 P.3d 305 (2005), arguing that a CR 60 motion to set aside a judgment " 'shall be made within a reasonable time' " and that PSM filed for review within a reasonable time. Reply Br. of Appellant at 4 (quoting CR 60(b)). But PSM misinterprets the directive that we "us[e] the provisions of Superior Court Civil Rule 60 as a guideline" to give meaning to "good cause." WAC 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(1).

¶28 CR 60(b)(1)-(11) lay out a specific list of factors, including "excusable neglect," that may constitute good reason for a court to "relieve a party . . . from a final . . . order." CR 60(b). But PSM looks beyond this list to another portion of CR 60(b) for guidance on construing "good cause," which states, "The motion [to vacate a final order based on such reasons as 'excusable neglect'] shall be made within a reasonable time." Thus, PSM relies on the general statement of "a reasonable time" to file to avoid the real reason

underlying a late filing. Here, former WAC 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(3) states a specific time for filing an appeal and that the basis of any late filing must be for "good reason." When a general statute conflicts with a specific statute covering the same subject in a more minute and definite way, the specific statute will prevail. *State ex rel. Phillips v. Wash. State Liquor Control Bd.*, 59 Wn.2d 565, 567, 369 P.2d 844 (1962). Likewise, we construe a specific regulation or rule instead of a general rule when they both deal with the same subject.

¶29 While it is true that WAC 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(1) does not specify which portion of CR 60(b) should be used as a guideline, we derive guidance for "good cause" from the specific list of factors that set forth the "reasons" justifying a motion to vacate, thus avoiding a strained result that the legislature did not intend.[10] *State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987).

¶30 In summary, we construe the phrase "good reason" by holding that former WAC 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 is in pari materia with other regulations in the same chapter that use the phrase "good cause." And in using CR 60 as a guideline in defining "good cause," PSM relies on a showing of "excusable neglect." Because we hold that PSM cannot show

_____

[10] CR 60(b)'s complete language, as opposed to the sentence fragment on which PSM relies, further supports a rejection of the "reasonable time" language as guidance for "good cause." *See McGowan v. State*, 148 Wn.2d 278, 288, 60 P.3d 67 (2002). The complete rule reads, "The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken." CR 60(b). The one year provision conflicts with the time limits in former WAC 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(3)(a), which states that, "A review judge may accept a review request only if . . . [t]he BOA receives the review request on or before the thirtieth calendar day after the deadline." Because our ultimate goal is to construe the phrase "good reason" as it appears in former WAC 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, we hold that DSHS, when it promulgated the rule, did not intend for us to rely upon a conflicting provision of a guiding rule. *See Stannard*, 109 Wn.2d at 36.

Further, a "reasonable time" analysis under CR 60(b) directs us to consider such factors as the reason for the delay and the extent of prejudice to the other party. *Luckett*, 98 Wn. App. at 312. But to do so conflicts with the "excusable neglect" basis for allowing a motion to vacate that does not consider such factors and ends our analysis if, for example, the delay was caused by internal organizational failings. *See Prest*, 79 Wn. App. at 100. Accordingly, we rely upon the specific factors laid out in CR 60(b)(1)-(11), including "excusable neglect," instead of the more general procedural language of "reasonable time."

"excusable neglect," we conclude that it did not have good reason for its delay in filing for review with the BOA.

¶31 We acknowledge that our conclusion seemingly affects a harsh result on a party who filed for review one day late. But we also note that a party arguing "good reason" under former WAC 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 may avoid such a harsh result by showing that, under a CR 60 "guideline" analysis, it had "a prima facie" defense to the other party's claims, and that it failed to timely respond due to "excusable neglect."[11] *Pfaff v. State Farm Mut. Auto. Ins. Co.*, 103 Wn. App. 829, 834, 14 P.3d 837 (2000). Here, PSM makes no such argument and we cannot determine whether there was a prima facie defense because the record before the Office of Administrative Hearings is not before us.

¶32 We affirm.

HUNT and PENOYAR, JJ., concur.

---

[11] A prima facie defense along with a showing that the party's "failure to timely appear . . . and answer [was due to] mistake, inadvertence, surprise or excusable neglect" are the two chief considerations to vacate a default judgment under CR 60. *White*, 73 Wn.2d at 352. "If a CR 60 movant cannot produce substantial evidence with which to oppose the claim, there is no point to setting aside the judgment and conducting further proceedings." *Pfaff*, 103 Wn. App. at 834.