[No. 66660-6-I.   Division One.   June 27, 2011.]

LIFE CARE CENTERS OF AMERICA, INC., ET AL., *Appellants*, v. THE
DEPARTMENT OF SOCIAL AND HEALTH SERVICES,
*Respondent*.

*John F. Sullivan* (of *Inslee, Best, Doezie & Ryder PS*), for appellants.

*Robert M. McKenna, Attorney General,* and *Katy A. Hatfield, Assistant,* for respondent.

¶1 Cox, J. — Life Care Centers of America Inc. and other nursing facilities (collectively Life Care) appeal the superior court's order affirming the decision and final order dated January 2009 of the Department of Social and Health Services Board of Appeals (Board). The Board decided that the Department of Social and Health Services (DSHS) correctly calculated the direct care component of the Medicaid payment rate for Life Care. Because Life Care fails to show that the Board erroneously interpreted or applied the law, we affirm.

¶2 DSHS administers the Medicaid program in the state of Washington. As part of this program, DSHS compensates nursing facilities in this state for care they provide to residents who qualify for Medicaid. Chapter 74.46 RCW, the nursing facility Medicaid payment system, states the methodology by which DSHS determines how to allocate payments among the various facilities.

¶3 The dispute in this case is over the methodology DSHS used to allocate Medicaid payment rates effective July 1, 2007, for Life Care facilities. Life Care appealed the DSHS determination to the Board. In its decision and final order, the Board entered findings of fact and conclusions of law and determined that DSHS correctly applied the governing statutes in allocating payment rates. The superior court affirmed.

¶4 Life Care appeals.

## DIRECT CARE COMPONENT RATE

¶5 Life Care argues that the Board erroneously interpreted and applied the law in determining that DSHS's calculation of the direct care component rates for Medicaid payment rates to Life Care facilities was proper. We hold that the Board correctly interpreted and applied the law governing direct care component rates: DSHS correctly calculated this rate.

¶6 The Administrative Procedure Act governs this court's review of the Board's decision.[1] We may reverse if the Board's decision "erroneously interpreted or applied the law."[2] Additionally, we may grant relief only if we decide that Life Care has been substantially prejudiced by the Board's decision.[3] The challenging party, Life Care, bears the burden of demonstrating the invalidity of the Board's decision.[4]

¶7 In reviewing the Board's decision, we sit in the same position as the superior court.[5] We apply " 'the proper standard of review directly to the record of the administrative proceedings and not to the findings and conclusions of the superior court.' "[6] Unchallenged factual findings are verities on appeal.[7]

¶8 Interpretation of the statute governing reimbursement rates is a question of law.[8] Therefore, we review de novo the Board's decision under the error of law standard, which allows us to substitute our interpretation of the law for that of the Board.[9] But, we accord " 'great weight' " to the statutory interpretation of the executive agency

---

[1] *See* RCW 34.05.570; *Utter v. Dep't of Soc. & Health Servs.*, 140 Wn. App. 293, 299, 165 P.3d 399 (2007) (citing *Burnham v. Dep't of Soc. & Health Servs.*, 115 Wn. App. 435, 438, 63 P.3d 816 (2003)).

[2] RCW 34.05.570(3)(d).

[3] RCW 34.05.570(1)(d).

[4] RCW 34.05.570(1)(a).

[5] *Utter*, 140 Wn. App. at 299 (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998)).

[6] *D.W. Close Co., Inc. v. Dep't of Labor & Indus.*, 143 Wn. App. 118, 125, 177 P.3d 143 (2008) (quoting *Brandley v. Dep't of Emp't Sec.*, 23 Wn. App. 339, 342, 595 P.2d 565 (1979)).

[7] *Netversant Wireless Sys. v. Dep't of Labor & Indus.*, 133 Wn. App. 813, 823, 138 P.3d 161 (2006) (citing *State v. Rankin*, 151 Wn.2d 689, 709, 92 P.3d 202 (2004)).

[8] *Whidbey Island Manor, Inc. v. Dep't of Soc. & Health Servs.*, 56 Wn. App. 245, 249, 783 P.2d 109 (1989).

[9] *Puget Sound Med. Supply v. Dep't of Soc. & Health Servs.*, 156 Wn. App. 364, 369, 234 P.3d 246 (2010) (citing *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991)).

charged with a statute's enforcement.[10] "But the agency's interpretation is not conclusive because 'it is ultimately for the court to determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law.' "[11]

¶9 In determining the Legislature's intent, we look first to the statute's plain language.[12] We examine the language of the statute, other provisions of the same act, and related statutes to determine the plain meaning.[13] We do not "favor repeal by implication, and where potentially conflicting acts can be harmonized, we construe each to maintain the integrity of the other."[14] If the plain language is unambiguous, we enforce the statute in accordance with its plain meaning.[15]

¶10 DSHS determines a Medicaid payment rate for each nursing facility that is effective July 1 of the applicable year and runs through June 30 of the year specified in the governing statute.[16] Medicaid payment rates are facility-specific. For example, DSHS may determine that one facility should receive $156 per Medicaid resident per day, while another facility should receive $161 per Medicaid resident per day.

¶11 A nursing facility's Medicaid payment rate is based on a combination of seven components, which are

---

[10] *Id.* (quoting *Glaubach v. Regence BlueShield*, 149 Wn.2d 827, 834, 74 P.3d 115 (2003)).

[11] *Id.* (quoting *Overton v. Econ. Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981)).

[12] *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

[13] *In re Det. of Coppin*, 157 Wn. App. 537, 552, 238 P.3d 1192 (2010) (citing *City of Seattle v. Allison*, 148 Wn.2d 75, 81, 59 P.3d 85 (2002)), *review denied*, 170 Wn.2d 1025 (2011).

[14] *Anderson v. Dep't of Corr.*, 159 Wn.2d 849, 859, 154 P.3d 220 (2007) (citing *Misterek v. Wash. Mineral Prods., Inc.*, 85 Wn.2d 166, 168, 531 P.2d 805 (1975)).

[15] *Armendariz*, 160 Wn.2d at 110.

[16] Former RCW 74.46.431(4)(a) (2007).

defined by statute.[17] The "direct care component rate" is one of these seven components. It is adjusted annually for economic trends and other factors.[18] These annual adjustments are not at issue in this appeal. Accordingly, we do not consider them further in this analysis.

¶12 Generally, the direct care component rate of a facility's Medicaid payment rate depends on three factors. They are the facility's allowed costs, the complexity of care required by *only* the facility's Medicaid residents, and the complexity of care required by *all* the facility's residents.

¶13 The first of these factors, the facility's allowed costs, consists of those audited costs that DSHS determines are permitted by law.[19] The audited costs come from an annual cost report submitted by the facility to DSHS.[20] There is no dispute in this appeal over this factor.

¶14 The second of these factors, the complexity of care required by *only* the facility's Medicaid residents, is defined as the "Medicaid Average Case Mix Index" (MACMI).[21] There is no dispute in this appeal over this index.

¶15 The third and final factor, the complexity of care required by *all* the facility's residents, is defined as the "Facility Average Case Mix Index" (FACMI).[22] The dispute in this appeal centers on this index.

¶16 One way of expressing the relationship among these three factors is that a facility's direct care component rate equals the product of the facility's allowable costs and the

---

[17] Former RCW 74.46.431(1) (2007) ("[N]ursing facility Medicaid payment rate allocations shall be facility-specific and shall have seven components: Direct care, therapy care, support services, operations, property, financing allowance, and variable return.").

[18] Former RCW 74.46.431(4)(e) (2007).

[19] Former RCW 74.46.100 (2006).

[20] Former RCW 74.46.030-.060 (2006).

[21] Former RCW 74.46.501(1) (2006).

[22] *Id.*

ratio of its MACMI to its FACMI. This relationship may also be expressed formulaically as follows:

Direct care component rate = Allowed costs x (MACMI ÷ FACMI).

¶17 Thus, if one assumes that the allowed costs and the MACMI remain constant, an increase in the FACMI will decrease the direct care component rate. Conversely, assuming the allowed costs and the FACMI remain constant, an increase in the MACMI will increase the direct care component rate.

¶18 A brief explanation of the concept of "complexity of care," found in both the MACMI and FACMI, provides context for this discussion. This concept is specific to each facility's residents and is a function of first assessing each resident's nursing care needs. Based on this individual assessment of need, each resident is then classified into one of 44 resource utilization groups.[23] A numerical "case mix weight" is assigned to each of these groups. Case mix weights are based on an average number of nursing minutes required to meet each group's nursing needs by registered nurses, licensed practical nurses, and certified nurse aides and the average wages of these professionals.[24]

¶19 Former RCW 74.46.496(4) and (5) (2006) require DSHS to "revise" (update) case mix weights for more recent wage costs when the direct care component rates are periodically "cost-rebased" (updated). The wage costs are reported to DSHS as part of the annual cost report discussed above.[25]

¶20 In this case, Life Care challenges the wage costs in the case mix weights that DSHS used in its calculation of the FACMI that was effective July 1, 2007, for the direct care component of the Medicaid payment rate. We examine this challenge in more detail later in this opinion.

---

[23] Former RCW 74.46.485(1) (2006); former RCW 74.46.020(54) (2006).

[24] Former RCW 74.46.496(2) (2006).

[25] *See* former RCW 74.46.030 (1980) ("the department shall receive complete, annual reporting of costs . . . of the contractor").

## Calculation and Use of FACMI and MACMI

¶21 Former RCW 74.46.501 (2006) states how the MACMI and FACMI are each calculated and used:

(1) From individual case mix weights for the applicable quarter, the department shall determine two average case mix indexes for each medicaid nursing facility, one for all residents in the facility, known as the [FACMI], and one for medicaid residents, known as the [MACMI].

. . . .

(7)(a) Although the [FACMI and the MACMI] shall both be *calculated* quarterly, the [FACMI] will be *used* throughout the applicable cost-rebasing period in combination with cost report data as specified by RCW 74.46.431 and 74.46.506, to establish a facility's allowable cost per case mix unit. A facility's [MACMI] shall be used to update a nursing facility's direct care component rate quarterly.

(b) The [FACMI] used to establish each nursing facility's direct care component rate shall be based on an average of calendar quarters of the facility's average case mix indexes.

. . . .

(iii) Beginning on July 1, 2006, when establishing the direct care component rates, the department shall use an average of [FACMIs] from the four calendar quarters occurring during the cost report period used to rebase the direct care component rate allocations as specified in RCW 74.46.431.

(c) *The [MACMI]* used to update or recalibrate a nursing facility's direct care component rate quarterly *shall be from the calendar quarter commencing six months prior to the effective date of the quarterly rate.* For example, October 1, 1998, through December 31, 1998, direct care component rates shall utilize case mix averages from the April 1, 1998, through June 30, 1998, calendar quarter, and so forth.[26]

¶22 The plain words of this statute require DSHS to *calculate* both case mix indexes quarterly. But it also

---

[26] (Emphasis added.)

requires DSHS to *use* case mix indexes from different periods when it periodically updates a facility's direct care component rate. Specifically, subsection (7)(b)(iii) of this statute specifies that the FACMI for the update effective July 1, 2007, shall be "an average of [FACMIs] from the four calendar quarters occurring during the cost report period used to rebase the direct care component rate allocations."[27] In contrast, subsection (7)(c) of this statute specifies that the MACMI for the same update shall be "from the calendar quarter commencing six months prior to the effective date of the quarterly rate."[28]

¶23 Here, it is undisputed that DSHS correctly used the MACMI from the first quarter of 2007, commencing January 1, 2007, to update the direct care component rate effective July 1, 2007, for Life Care's nursing facilities.[29] That is consistent with subsection (7)(c) of the statute. Life Care does not contest the use of this MACMI to update the direct care component rate for the period starting July 1, 2007.

¶24 It is also undisputed that DSHS used a FACMI calculated by averaging the FACMI values calculated during the four calendar quarters of 2005 that included case mix weight calculations done in 2001.[30] These case mix weight calculations were based on 1999 adjusted cost report data.[31] Life Care argues that these calculations were legally incorrect for the update of direct care component rates effective July 1, 2007.

### *FACMI Effective July 1, 2007*

¶25 We conclude that answering this argument requires a careful reading of former RCW 74.46.501(7)(b)(iii) (2006)

---

[27] Former RCW 74.46.501(7)(b)(iii) (2006).

[28] Former RCW 74.46.501(7)(c) (2006).

[29] Certified Appeal Board Record (CABR) at 3 (Finding of Fact 3).

[30] *Id.* at 3-4 (Finding of Fact 4).

[31] *Id.*

and former RCW 74.46.431(4)(a) (2007) together. Former RCW 74.46.501(7)(b)(iii) (2006) states that DSHS shall use the FACMI that is "an average of [FACMIs] from the four calendar quarters *occurring during* the cost report period used to rebase the direct care component rate allocations as specified in RCW 74.46.431."[32] Focusing first on the latter part of this text, the question is what "cost report period" the statute specifies shall be used to update the direct care component rate effective July 1, 2007? Former RCW 74.46.431(4)(a) (2007) provides in part:

> Direct care component rate allocations shall be established using adjusted cost report data covering at least six months. . . . [A]djusted cost report data from 1999 will be used for July 1, 2001, through June 30, 2006, direct care component rate allocations. . . . Adjusted *cost report data from 2005* will be used for *July 1, 2007*, through June 30, 2009, direct care component rate allocations.[33]

¶26 Thus, calendar year 2005 was the proper cost report period used to update the direct care component rate effective July 1, 2007.

¶27 Shifting focus to the first part of the above text from former RCW 74.46.501(7)(b)(iii) (2006), the next question is what is "an average of [FACMIs] from the four calendar quarters *occurring during*" the 2005 cost report period?[34] The text's plain words provide the answer: the average of the four FACMIs that were calculated during calendar year 2005. Thus, the next issue is to resolve how these four FACMIs should have been calculated during calendar year 2005.

¶28 We start our consideration of this issue by observing that FACMIs are a function of case mix weights. By statute, case mix weights generally are updated only when direct

---

[32] (Emphasis added.)

[33] (Emphasis added.)

[34] (Emphasis added.)

care component rates are updated.[35] In 2005, the then most current update of direct care component rates was effective July 1, 2001, and remained unchanged through June 30, 2006.[36] That July 1, 2001, update was done on the basis of 1999 cost report data for the various types of nursing care provided.[37] Because the direct care component rates were not updated during the five year period from July 1, 2001, through June 30, 2006, the case mix weights for this five year period were not updated. Accordingly, the four FACMIs calculated during calendar year 2005 were properly based on case mix weights that were last updated effective July 1, 2001.

¶29 To summarize, the FACMI used for the direct care component of the Medicaid payment rate effective July 1, 2007, was an average of the four FACMIs that were calculated during calendar year 2005. This average was properly based on the then most current update of the direct care component rate: that effective July 1, 2001, and continuing through June 30, 2006. That July 1, 2001, update was done using cost report data from 1999. There was no requirement to update the case mix weights in calendar year 2005 because there was no update of the direct care component rates between July 1, 2001, and June 30, 2006. Accordingly, the four FACMIs for calendar year 2005 were properly based on cost report data from 1999. The Board correctly interpreted and applied the governing law.

---

[35] Former RCW 74.46.496 (2006) ("(4) The case mix weights in this state may be revised if the health care financing administration updates its nursing facility staff time measurement studies. *The case mix weights shall be revised, but only when direct care component rates are cost-rebased as provided in subsection (5) of this section, to be effective on the July 1st effective date of each cost-rebased direct care component rate.* However, the department may revise case mix weights more frequently if, and only if, significant variances in wage ratios occur among direct care staff in the different caregiver classifications identified in this section. (5) Case mix weights shall be revised when direct care component rates are cost-rebased as provided in RCW 74.46.431(4)." (emphasis added)).

[36] Former RCW 74.46.431(4)(a) (2007).

[37] *Id.*

¶30 Life Care makes several arguments to support its contention that the Board erroneously interpreted and applied the law governing the FACMI used to update the direct care component rate for July 1, 2007. None are persuasive.

¶31 Life Care first argues that the use of case mix weights based on 1999 cost report data for the FACMI used for the update effective July 1, 2007, is contrary to former RCW 74.46.431(4)(a) (2007). In the words of Life Care, the essence of its claim is that "[t]here is no rational basis for using the 1999 case mix weights in the FACMI calculation" when "the 2005 revised case mix weights were readily available."[38] Life Care correctly observes that more recent case mix weights were used to calculate the MACMI factor to update the direct care component rate effective July 1, 2007. But, this argument is unpersuasive for three reasons.

¶32 First, it is based on the faulty premise that our task is to determine whether there is a rational basis for the Legislature's policy underlying these statutes. But that is not our task. Rather, we must determine the Legislature's intent, as expressed by the statutes before us.

¶33 Second, as we explained earlier in this opinion, the statutes clearly state that the MACMI and FACMI shall be determined from different periods. To calculate the MACMI, DSHS properly used the MACMI from the calendar quarter that started six months before the effective date of the updating (here, the quarter started on January 1, 2007), which included more recent case mix weights.[39] But the statute specifies that DSHS must use other information to calculate the FACMI.[40] In this case, that information was the average of the four FACMIs calculated in calendar year 2005, which were based on case mix weights calculated effective July 1, 2001.

---

[38] Appellants' Opening Brief at 7, 9.

[39] Former RCW 74.46.501(7)(c) (2006).

[40] *See* former RCW 74.46.501(7)(b) (2006).

¶34 Third, the dispositive issue is whether the average of the four FACMIs for calendar year 2005 was properly based on 1999 cost report data. Because case mix weights are updated only when direct care component rates are updated, and the July 1, 2001, update was the then most current update during calendar year 2005, the cost report data on which the case mix weights were based control. The year for that data was 1999. Life Care simply misreads former RCW 74.46.431(4)(a) (2007) to the extent it claims that 2005 cost report data should have been used to calculate the FACMI for the update of the direct care component rate effective July 1, 2007.

¶35 Life Care next argues that calculating the FACMI for the update effective July 1, 2007, without using the 2005 cost report data conflicts with former RCW 74.46.496(4) and (5) (2006). Life Care is mistaken.

¶36 The statutes direct that the MACMI and FACMI for the periodic updates of the direct care component rates are calculated on the basis of different time periods. It follows that the case mix weights for each of these factors could also differ depending upon the periods at issue.

¶37 More fundamentally, Life Care misreads former RCW 74.46.496(4) and (5) (2006) to the extent it claims that DSHS was required to update case mix weights using cost report data from 2005 in calculating the FACMI effective July 1, 2007. Former RCW 74.46.496(5) (2006) states that case mix weights shall be revised "when direct care component rates are cost-rebased as provided in RCW 74.46.431(4)." The latter statute specifies that cost report data from 1999 will be used for the five year period from July 1, 2001, through June 20, 2006. Case mix weights, on which FACMIs for this period were calculated, necessarily were also based on 1999 cost report data. The time lag is caused by the provisions of the statute that mandated a five year period during which there was no updating of the direct care component and, thus, no updating of the case mix weights.

¶38 Life Care also argues that DSHS improperly construed former RCW 74.46.501(7)(b)(iii) (2006) to conflict with former RCW 74.46.431(4)(a) (2007) and former RCW 74.46.496(4) and (5) (2006). We see no conflict.

¶39 Life Care claims that DSHS did not update the case mix weights for the FACMI when it updated the direct care component rates. This appears to be a complaint that is both factually and legally incorrect.

¶40 The Board found that DSHS did update its case mix weights when it updated its direct care component rates.[41] There is nothing in this record to substantiate that DSHS failed to update the case mix weights, as required by statute, when the direct care component rates were updated effective July 1, 2001, 2006, and 2007. Additionally, Life Care does not challenge this finding of fact,[42] so it is a verity on appeal.[43]

¶41 To the extent Life Care claims that case mix weights updated in 2007 should have been used for the calculation of the FACMI index for the direct care component rate effective July 1, 2007, it misreads former RCW 74.46-.501(7)(b)(iii) (2006) and former RCW 74.46.431(4)(a) (2007). As these statutes make clear, direct care component rates are calculated on the basis of information from prior calendar years. These statutes plainly require the use of the 2005 FACMI indexes, which are based on 1999 cost report data, rather than the 2007 FACMI indexes, which are based upon 2005 cost report data. Therefore, the 2007 update of the case mix weights has no impact on the FACMI indexes calculated previously in 2005.

---

[41] CABR at 10-11 (Conclusion of Law 9).

[42] *Imrie v. Kelley*, 160 Wn. App. 1, 7, 250 P.3d 1045 (2010) ("A finding of fact that is mislabeled as a conclusion of law is reviewed as a finding of fact." (citing *State v. Ross*, 141 Wn.2d 304, 309, 4 P.3d 130 (2000))), *review denied*, 171 Wn.2d 1029 (2011).

[43] *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 407, 858 P.2d 494 (1993) (holding that unchallenged findings of fact made by an administrative law judge are treated as verities on appeal).

¶42  We affirm the decision and final order of the Board.

LEACH, A.C.J., and SPEARMAN, J., concur.

Reconsideration denied August 12, 2011.