IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In Re: PAVEL ALEKSENTSEV. | ) | |
| | ) | No. 31255-1-III |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

KORSMO, J. — Pavel Aleksentsev appeals an administrative ruling that he mentally abused a vulnerable adult. Because the evidence supports the determination, we affirm.

## FACTS

Mr. Aleksentsev is a Ukrainian immigrant who has lived in the United States for 10 years. For six months in late 2008 and early 2009, he provided in-home care assistance for Connie, a 60-year-old wheel chair bound woman with multiple sclerosis. The working relationship between the two was good for the first five months, but deteriorated in the final month due to three incidents.

The first incident upsetting the relationship occurred when Mr. Aleksentsev muttered the words "those bitches" in Connie's presence. She told him such language offended her. He ceased saying the words in her presence.

The second incident involved Mr. Aleksentsev repeatedly playing an audio/video clip on his telephone of a child demeaning women with vulgar language and threats of violence. Connie several times told him to stop playing the clip.

The final incident involved Mr. Aleksentsev driving Connie to an optometrist appointment. At the conclusion of the appointment, Connie wanted to go home because she was hungry and exhausted. Instead, he drove her to Arby's and then wanted to go buy flowers. Connie "almost had to have a fit" to get him to return her home. Clerk's Papers (CP) at 57

Adult Protective Services (APS) received a referral alleging mental and sexual abuse in March 2009. Investigator Curt Crusch interviewed Connie, her mother, and Mr. Aleksentsev. After that investigation, APS concluded that more likely than not Mr. Aleksentsev had abused a vulnerable adult. It issued a letter determination to that effect.

Department of Social and Health Services (DSHS) notified Mr. Aleksentsev that the APS determination would result in listing him on the registry of those who have abused vulnerable adults, an action that would preclude further employment serving the vulnerable community. He challenged the APS ruling and an initial hearing was held before an administrative law judge (ALJ) on February 25, 2010. The ALJ issued an initial order March 16, 2010, determining that Mr. Aleksentsev had abused a vulnerable adult. He filed a request for review. The audio record of proceedings, however, was not available. The Board of Appeals remanded the case to the ALJ for a second hearing.

2

In order to shorten the length of the second hearing, the parties stipulated to the first seven factual findings and the first seven conclusions of the March 16 order. Connie testified that she did not feel frightened or intimidated by Mr. Aleksentsev, but was annoyed by his actions. She did not believe he was trying to hurt her, but did state that the incidents caused her stress and wore her out emotionally. The second hearing reached the same result as the first. Mr. Aleksentsev then appealed to the Board of Appeals which affirmed the ALJ.

Mr. Aleksentsev next appealed to superior court. The superior court also affirmed the ALJ. Mr. Aleksentsev then appealed to this court.

## ANALYSIS

Mr. Aleksentsev challenges several factual findings. He also argues that he did not abuse Connie, that expert testimony was necessary to establish abuse, that he was unable to cross-examine investigator Crusch properly, and that he was denied the opportunity to have an interpreter during his interview with Crusch. We address the claims in that order.

*Factual Findings*

Mr. Aleksentsev assigns error to eight of the findings of fact entered by the superior court. We review factual findings for "substantial evidence," which in turn means evidence that "is sufficient to persuade a rational, fair-minded person that the finding is true." *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685

3

(2012). The legal conclusions that flow from the findings are reviewed de novo. *Id.*

Credibility determinations will not be reconsidered on appeal. *Id.* at 22. When a factual

finding is misidentified as a legal conclusion, we will treat it as a conclusion. *Life Care*

*Ctrs. of Am., Inc. v. Dep't of Soc. & Health Servs.*, 162 Wn. App. 370, 384 n.42, 254 P.3d

919 (2011).

Not all of the witnesses testified at the second hearing. Instead, the court without

objection considered statements made to Mr. Crusch at the first hearing. Among other

claims, Mr. Aleksentsev claims that the findings are invalid because they are based, in

part, on hearsay. However, none of the hearsay evidence was objected to at the hearing.

Accordingly, Mr. Aleksentsev cannot make that claim now. *E.g., State v. Guloy*, 104

Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986).

The first challenge is to finding of fact 1.3:

> Mr. Aleksentsev willfully played a recording that Connie found vulgar and
> nasty. This was a recording of a baby using rude, nasty and racist
> language. Mr. Aleksentsev played this recording several times in the same
> room as Connie despite being asked repeatedly to stop playing the
> recording. Connie also advised this recording was offensive to her.

CP at 2.

Mr. Aleksentsev argues that this finding is not supported by the evidence because

there were two versions of this event. However, the presence of conflicting evidence

does not mean the fact finder's resolution of the conflict is unsupported. It is, after all,

the job of the fact finder to determine credibility and decide whether or not to believe the

evidence. Here, the challenged finding was supported by Connie's testimony. The fact that Mr. Aleksentsev gave a contrary version does not render Connie's evidence impotent. Her testimony supported the finding.

For similar reasons, Mr. Aleksentsev's challenges to findings of fact 1.5, 1.6, and 1.7 all fail. All were supported by Connie's testimony. While Mr. Aleksentsev denies that some of these incidents occurred (at least in the manner described by Connie), her testimony did allow the ALJ to find otherwise. Hence, the evidence was sufficient.

Mr. Aleksentsev also challenges findings 1.8, 1.9, 1.11, and 1.12. Findings 1.9 and 1.11 address the interpreter issue and the cross-examination issue, respectively, and will be addressed to the extent necessary in the discussion of those issues. Findings 1.8 and 1.12, however, are conclusions of law concerning the mental abuse ruling. We address those matters in the next section of this opinion.

*Mental Abuse*

Mr. Aleksentsev presents four arguments against the mental abuse determination. Three of his arguments address (in various forms) the mental element underlying the abuse ruling, while the fourth argument is a contention that only an expert can render an opinion on mental abuse. We treat his initial arguments as one question—what is the necessary mens rea for this statute? We first address that issue before turning to the contention that expert testimony was necessary.

The statutes at issue are found in chapter 74.34 RCW, the Abuse of Vulnerable Adults Act (AVA). The purpose of the chapter is to protect vulnerable adults from abuse, financial exploitation, and neglect. RCW 74.34.110. As relevant here, the statute entitles the vulnerable adult or an interested person on her behalf to seek relief from abuse. RCW 74.34.110(1), (2). Various definitions in RCW 74.34.020 inform our discussion.

Subsection (2) defines "abuse" as "willful action or inaction that inflicts injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult . . . . Abuse includes sexual abuse, mental abuse, physical abuse, and exploitation of a vulnerable adult." RCW 74.34.020(2). The statute then goes on to define each of those variations in turn. "Mental abuse" is defined as "any willful action or inaction of mental or verbal abuse. Mental abuse includes, but is not limited to, coercion, harassment, inappropriately isolating a vulnerable adult from family, friends, or regular activity, and verbal assault that includes ridiculing, intimidating, yelling, or swearing." RCW 74.34.020(2)(c). RCW 74.34.020 does not define "willful" but WAC 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 does.[1] That section defines "willful" as "the nonaccidental action or inaction by an alleged perpetrator that he/she knew or reasonably should have known could cause harm, injury or a negative outcome." WAC 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.

---

[1] WAC 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 asserts "In addition to the definitions found in chapter 74.34 RCW, the following definitions apply."

As relevant to the facts of this case, to establish abuse under chapter 74.34 RCW there needed to be proof that Mr. Aleksentsev had: (1) undertaken improper,[2] nonaccidental action or inaction[3] of (2) mental or verbal abuse to include, but not limited to . . . harassment,[4] (3) that he knew or reasonably should have known could cause harm, injury, or a negative outcome[5] and (4) that did in fact inflict injury[6] (5) on a vulnerable adult.

The first element of this action is found in our decision in *Brown v. Department of Social & Health Services.*, 145 Wn. App. 177, 183, 185 P.3d 1210 (2008). There we addressed the situation where a caregiver had to "take down" a client in order to protect others from violence. *Brown*, 145 Wn. App. 177. This court held that the willful action required under RCW 74.34.020(2) must be "improper action." *Id.* at 183. Finding no

---

[2] The "improper" element was added by our decision in *Brown v. Department of Social & Health Services.*, 145 Wn. App. 177, 183, 185 P.3d 1210 (2008).

[3] WAC 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: "'[W]illful' means the nonaccidental action or inaction by an alleged perpetrator that he/she knew or reasonably should have known could cause harm, injury or a negative outcome."

[4] "Abuse includes sexual abuse, mental abuse, physical abuse, and exploitation of a vulnerable adult." RCW 74.34.020(2). "'Mental abuse' means any willful action or inaction of mental or verbal abuse." RCW 74.34.020(2)(c). "Mental abuse includes, but is not limited to . . . harassment." RCW 74.34.020(2)(c).

[5] See footnote 3.

[6] "'Abuse' means the willful action or inaction that inflicts injury." RCW 74.34.020(2).

improper action in protecting the other residents of the home, our court found Ms. Brown did not abuse a client by preventing violence against others. *Id.*

Mr. Aleksentsev argues that his actions also were not "improper" under *Brown*. We disagree. In *Brown*, we used "improper" in the sense of "not justified." It was appropriate for Ms. Brown to "take down" the agitated client who was attempting to attack others. Here, there was no need to repeatedly play a vulgar video that Mr. Aleksentsev knew was upsetting to Connie. Even more importantly, dragging Connie along to extra stops after her optometrist appointment over her objection also had no legitimate purpose. None of these actions was necessary to the performance of Mr. Aleksentsev's job and did not serve a higher purpose such as Ms. Brown's action in protecting a client. Under the facts of this case, we have no difficulty concluding that the challenged actions were "improper" under *Brown*.

In addition to being improper under our case law, the actions must be "willful" in accordance with RCW 74.34.020(2) and WAC 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. In the context of this first element, willfulness simply requires the improper actions to be purposeful rather than accidental.[7] The requirement was established here with both the video and the driving incidents.[8] Neither of them was an accidental occurrence.

---

[7] Foreseeability is discussed in the third element.

[8] We agree that the initial ("those bitches") incident does not establish a willful action as there was no evidence that he knowingly communicated to Connie or had any

The second element is proof that the actions constituted mental or verbal abuse. Although this is a close call, we agree with the ALJ that the actions did constitute abuse. The incident with the word "bitches" showed Mr. Aleksentsev that Connie was sensitive to crude language. To then repeatedly play a video of a young child using vulgar language and threatening women was something that Mr. Aleksentsev knew, or should have known, would upset Connie. He then upset her on a different occasion by extending her trip outside the home in order to conduct business of his own. Both of these later incidents did constitute abuse of a vulnerable adult.

The third element is whether the actions were ones that Mr. Aleksentsev reasonably knew or should have known would cause harm or a "negative outcome" to Connie. Certainly he was on notice that Connie was offended by crude language, so repeatedly playing the video in her presence was something that he should have known would upset her. Connie also made her displeasure with the extended outing known to Mr. Aleksentsev, but he persisted in his travels until she had to act up to get his full attention. This, too, was a "negative outcome" for her. We believe that Mr. Aleksentsev knew or should have known these results would follow from his actions. This foreseeability element was satisfied.

---

reason to know that she would take offense.

The fourth element is whether Connie suffered an injury in fact from these actions. As the discussion of the previous element showed, Connie did become upset on both of these occasions as a result of Mr. Aleksentsev's purposeful conduct. This "negative outcome" is a foreseeable result of mental abuse. The fourth element, too, was satisfied.

The final element is whether Connie was a vulnerable adult. The parties do not dispute the element. Indeed, it was her status as a vulnerable adult that brought Mr. Aleksentsev into her life.

All elements of the abuse of a vulnerable adult finding are supported in the record. In many respects, the facts of this case are similar to the mental abuse found in *Goldsmith v. Department of Social & Health Services*, 169 Wn. App. 573, 280 P.3d 1173 (2012). There a son had repeatedly yelled at his father over the telephone concerning the father's financial affairs. *Id.* at 576-78. The father had become upset due to the calls. *Id.* This court affirmed the determination of mental abuse.

Having concluded that the finding was supported by the evidence, we thus turn to Mr. Aleksentsev's related contention that an abuse finding must be supported by expert testimony. Largely seizing on the word "mental," he argues that an abuse finding must be based on information beyond the kin of ordinary triers of fact. We again disagree.

The word "mental" is used merely as an adjective. The statute prohibits physical, sexual, mental or verbal *abuse.* RCW 74.34.020(2). It does not require proof of infliction of mental illness nor any other type of sophisticated injury. Accordingly, an

expert opinion is unnecessary. *See Goldsmith*, 169 Wn. App. at 585 (in a mental abuse case, this court determined that "the Department was not required to prove injury by expert medical testimony"). *Goldsmith* is dispositive of this argument.

We conclude that the mental abuse finding was supported by the evidence.

*Cross-examination of Investigator Crusch*

Mr. Aleksentsev next argues that he was not permitted to properly cross-examine Mr. Crusch. This argument overstates the situation and is without merit.

During the second hearing, the ALJ sustained a relevancy objection while Mr. Aleksentsev's counsel was cross-examining Mr. Crusch. Counsel asked if the investigator had also criticized one of Connie's earlier caregivers. Sustaining a relevancy objection, the ALJ stated that the investigator was not going to be put on trial. Mr. Aleksentsev's counsel then concluded his cross-examination without asking any further questions, stating that he was done.

The ALJ did not prohibit further cross-examination, and Mr. Aleksentsev did not indicate that there were other areas he wished to make inquiries of Mr. Crusch. There is no suggestion that important additional matters were not addressed. Instead, veteran counsel simply had reached the end of his examination. There was no more to do.

The record does not reflect that Mr. Aleksentsev's due process rights were violated in this circumstance.

11

*Interpreter During Investigation*

Finally, Mr. Aleksentsev argues that he was denied an interpreter during his interview with Mr. Crusch. The ALJ found otherwise and we are not in a position to find to the contrary.

The record on this point is disputed. Mr. Aleksentsev testified that he did request an interpreter on three occasions; Mr. Crusch said there was never any request. Evidence was also presented that Mr. Aleksentsev, who used an interpreter during his hearings, had not used an interpreter to communicate with his work supervisor or at any other time during his employment. The ALJ ruled that there had not been a request for an interpreter.

Appeals courts do not find facts and cannot substitute their view of the facts in the record for those of the trial judge. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Whether the facts are as the parties allege is for the trial judge to determine, not this court. *Hesperian*, 54 Wn.2d at 575.

The ALJ determined that Mr. Aleksentsev did not request an interpreter. That determination is binding on this court. Accordingly, this issue cannot afford appellant any relief.

Although the outcome of this review is to affirm the finding, we do note that this was a close case. It is a harsh result to deprive Mr. Aleksentsev of work in his chosen

field on the basis of what may have been, in part, cultural misunderstanding. However, the trier of fact saw matters differently and was entitled to conclude on the evidence that Mr. Aleksentsev acted with the intent of upsetting Connie. Our public policy is to protect the vulnerable population from all forms of abuse. The ALJ determined that mental abuse occurred here. As in *Goldsmith*, the evidence was sufficient to support that determination and this court must therefore defer to that judgment.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, A.C.J.