# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| AMIN KHANOF, | ) | No. 76300-8-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF SOCIAL & | ) | |
| HEALTH SERVICES, | ) | |
| | ) | |
| Respondent. | ) | FILED: June 11, 2018 |

2018 JUN 11 AM 10:38 COURT OF APPEALS DIV 1 STATE OF WASHINGTON FILED STATE OF WASHINGTON

SCHINDLER, J. — Amin Khanof, representing himself pro se, appeals the administrative order requiring him to pay current and future child support and back child support. Khanof argues the administrative law judge erred by imputing income and ordering Khanof to pay back child support. Because substantial evidence supports the order, we affirm.

## TANF and Child Support Obligation

Amin Khanof and Maryam Javan were married on June 9, 2010. Javan gave birth to their child on March 17, 2012. Khanof and Javan separated in January 2014. Javan obtained an order of protection. Beginning January 22, 2014, Javan received "Temporary Assistance for Needy Families" (TANF). The receipt of TANF results in an

automatic assignment to the state of any rights to the support obligation of Khanof.[1] The Department of Social and Health Services Division of Child Support (DCS) is responsible for initiating child support enforcement.[2]

On February 6, 2014, DCS designated the enforcement action as "Good Cause Level A." Good Cause Level A means DCS cannot proceed with enforcement because of a risk of danger to Javan or the child and must close the case.[3]

On March 25, 2014, Khanof and Javan reconciled and resumed living together. On March 4, 2015, Javan filed a petition for dissolution of the marriage and an order of protection.

In late October 2015, DCS changed the enforcement action designation to "Good Cause Level B." Good Cause Level B means DCS could proceed with child support enforcement without the cooperation of Javan.[4] On November 16, 2015, DCS mailed Khanof a letter informing him of the enforcement action. On December 24, DCS served Khanof with a "Notice and Finding of Financial Responsibility." The Notice states Khanof owes $427.00 for ongoing monthly current child support and $9,531.70 for back child support.

Khanof timely objected to the Notice and Finding of Financial Responsibility and requested an administrative hearing. Khanof argued the amount of child support was incorrect because he was not currently working. Khanof also argued he should not be responsible for back child support for the period of time that Javan received TANF.

---

[1] RCW 74.20.330(1); WAC 388-14A-2005.
[2] WAC 388-14A-2005(1).
[3] WAC 388-14A-2060(1)(a).
[4] WAC 388-14A-2060(1)(b).

Administrative Appeal

An administrative law judge (ALJ) held a hearing on March 2, 2016. Khanof and Javan testified. DCS claims officer Paul Piguet testified. DCS conceded it did not take reasonable steps to locate Khanof between October 28, 2015 and November 15, 2015.

On March 14, the ALJ issued a final order. The ALJ ordered Khanof to pay current and future child support of $331.00 a month. The ALJ ordered Khanof to pay $4,622.87 in back child support from January 22, 2014 through March 24, 2014 and from March 5, 2015 through February 29, 2016.

The ALJ entered findings of fact on the income and circumstances of Khanof and Javan.

> **Mr. Khanof's income and circumstances:** Mr. Khanof, age 34, born June 15, 1981, is currently employed part-time as a veterinary technician, earning $14.00 per hour. Prior to coming to the United States four years ago, Mr. Khanof was a licensed veterinarian and had his own veterinary clinic. Since he has moved to the United States, he has received certification as a veterinary technician. He is able to work at research facilities and university laboratories, but is not a licensed veterinarian. Mr. Khanof does not have any disabilities that interfere with his ability to work full-time. Therefore, Mr. Khanof's monthly gross income is imputed to $2,426.66, which represents monthly full-time earnings at $14.00 per hour.

> .... **Ms. Javan's income and circumstances:** Ms. Javan, age 42, born August 11, 1973, is currently unemployed. She lost her job as a child care worker on the day of the hearing due to her numerous court dates. Ms. Javan has no physical limitations impacting her ability to work. Her highest level of education is a Master's of Science in family psychology. Other than her job as a child care worker, Ms. Javan has never worked. Ms. Javan's income is imputed to $1641.00 gross monthly wage, which represents monthly full-time minimum wage earnings.[5]

The ALJ concluded DCS could collect back child support for the period of time that Javan received TANF and Khanof lived outside the home. The ALJ also accepted

---

[5] *Footnote omitted; boldface in original.*

the concession of DCS that it could not collect for the time period from October 28, 2015 through November 15, 2015 because it did not make reasonable efforts to locate Khanof.[6]

Khanof filed a petition for review to the superior court. The court affirmed the final order of the ALJ but modified the period of time DCS could not collect back child support to October 22, 2015 through December 24, 2015. The superior court concluded RCW 26.19.071(6) allows income to be imputed to Javan and Khanof. Representing himself pro se, Khanof appeals.

Standard of Review

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs our review of administrative actions. RCW 34.05.570(1); Cornelius v. Dep't of Ecology, 182 Wn.2d 574, 584-85, 344 P.3d 199 (2015). We sit in the same position as the superior court and do not defer to the rulings of the superior court. Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). We review the agency's decision by applying the standards set out in RCW 34.05.570 directly to the administrative record. Postema v. Pollution Control Hr'gs Bd., 142 Wn.2d 68, 77, 11 P.3d 726 (2000). We may reverse the decision of the agency where the agency erroneously applied the law, its order is not supported by substantial evidence, or the decision is arbitrary and capricious. RCW 34.05.570(3)(d), (e), (i); Postema, 142 Wn.2d at 77. The party asserting the order is invalid has the burden of demonstrating the invalidity. RCW 34.05.570(1)(a); Stewart v. Dep't of Soc. & Health Servs., 162 Wn. App. 266, 270, 252 P.3d 920 (2011).

---

[6] DCS does not lose the right to reimbursement for any period of time during which DCS exercised reasonable efforts to find the noncustodial parent. WAC 388-14A-3350(6)(d)(i).

4

We review the agency's findings for substantial evidence. RCW 34.05.570(3)(e); Raven v. Dep't of Soc. & Health Servs., 177 Wn.2d 804, 817, 306 P.3d 920 (2013). Evidence is substantial where it is sufficient to persuade a fair-minded person of the truth of the premise. Raven, 177 Wn.2d at 817. "Unchallenged factual findings are verities on appeal." Life Care Ctrs of Am., Inc. v. Dep't of Soc. & Health Servs., 162 Wn. App. 370, 374, 254 P.3d 919 (2011).

Issues Raised for the First Time on Appeal

Pro se litigants are held to the same standards as attorneys and are bound by the same rules of procedure and substantive law. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993); Westberg v. All-Purpose Structures, Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997). We have "no obligation to grant special favors to . . . a pro se litigant." Olson, 69 Wn. App. at 626.

Under WAPA, "[i]ssues not raised before the agency may not be raised on appeal." RCW 34.05.554(1); Alpha Kappa Lambda Fraternity v. Wash. State Univ., 152 Wn. App. 401, 420, 216 P.3d 451 (2009). Khanof argues that because Javan agreed to sponsor him when he emigrated from Iran, she is obligated to support him. Because Khanof did not raise this argument in the administrative appeal, we do not address it.

Khanof argues the ALJ erred by failing to consider payments he made to Javan for child support. Because Khanof does not support this with citation to the record or authority, we decline to consider it. Under RAP 10.3(a)(6), the appellant must provide "citations to legal authority and references to relevant parts of the record." "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

Imputed Income

Khanof challenges the amount of income the ALJ imputed to him and to Javan. Because he was studying to obtain his veterinary license, Khanof asserts the ALJ erred in concluding he is voluntarily underemployed. Khanof asserts the ALJ did not consider Javan's educational background and previous income in imputing minimum wage income to her.

A custodial parent receiving public assistance on behalf of a minor child assigns the right to receive child support to the state. RCW 74.20.330(1); WAC 388-14A-2005, -2036. DCS provides child support enforcement services to the family on behalf of the state. WAC 388-14A-1000(1), -2005. The uniform child support schedule applies in all judicial or administrative proceedings that determine or modify child support. RCW 26.19.035(1)(b), (c); In re Marriage of Brockopp, 78 Wn. App. 441, 445, 898 P.2d 849 (1995).

To determine a parent's child support obligation, the court must consider all income and resources of each parent's household. RCW 26.19.071(1). If a parent is "voluntarily unemployed or voluntarily underemployed," the court must impute income to the parent. RCW 26.19.071(6). The court determines whether a parent is "voluntarily underemployed or voluntarily unemployed" by looking at "that parent's work history, education, health, and age, or any other relevant factors." RCW 26.19.071(6). In imputing income, the court looks at "the level of employment 'at which the parent is capable and qualified.'" In re Marriage of Schumacher, 100 Wn. App. 208, 215, 997 P.2d 399 (2000) (quoting In re Marriage of Sacco, 114 Wn.2d 1, 4, 784 P.2d 1266

6

(1990)). The court must not impute income to a parent "who is gainfully employed on a full-time basis" or a parent who is "unemployable." RCW 26.19.071(6).

RCW 26.19.071(6) sets out the wage the court should use to impute income:

> In the absence of records of a parent's actual earnings, the court shall impute a parent's income in the following order of priority:
> (a) Full-time earnings at the current rate of pay;
> (b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data;
> (c) Full-time earnings at a past rate of pay where information is incomplete or sporadic;
> (d) Full-time earnings at minimum wage in the jurisdiction where the parent resides if the parent has a recent history of minimum wage earnings, is recently coming off public assistance, aged, blind, or disabled assistance benefits, pregnant women assistance benefits, essential needs and housing support, supplemental security income, or disability, has recently been released from incarceration, or is a high school student;
> (e) Median net monthly income of year-round full-time workers as derived from the United States bureau of census, current population reports, or such replacement report as published by the bureau of census.

Substantial evidence supports the ALJ findings on Khanof's income and financial situation and that he was voluntarily underemployed. Khanof was a licensed veterinarian in Iran and was studying to become licensed in the United States. Khanof testified that he worked about 10 to 12 hours per week as a veterinary technician earning $14 per hour. Khanof stated he was looking for additional work. Khanof did not present evidence that he was unable to work full time. The ALJ did not err by imputing full-time income to Khanof at his current $14 per hour rate of pay.

Javan testified she has a master's degree in family psychology. But work records from the Employment Security Department showed Javan had limited work experience outside the home. According to the Employment Security Department, Javan last worked in the second quarter of 2015. During that time period, Javan earned $959.75 for 87 hours of work.

At the March 2, 2016 hearing, Javan testified she had been employed recently as a preschool teacher. Javan testified that because court appearances caused her to miss too many days of work, she was no longer employed at that job. No evidence was presented about the wage Javan earned as a preschool teacher. Javan testified that before working as a preschool teacher, she was primarily a full-time mother and worked at the YMCA about two to three hours per day.

The ALJ imputed income at full-time minimum wage to Javan. RCW 29.19.071(6)(d) permits a court to impute income at minimum wage if the parent "is recently coming off public assistance." Because Javan received TANF until January 31, 2016 and the evidence shows Javan lost her job as a preschool teacher, substantial evidence supports the ALJ's income and financial circumstances findings and the decision to impute income to Javan at minimum wage.

Back Child Support

Khanof argues the ALJ erred by ordering him to pay back child support for the period of time when the case was designated Good Cause Level A. Khanof contends DCS cannot collect more than 60 days of back child support.

Khanof asserts the 60-day rule prohibits DCS from collecting more than 60 days of back child support. RCW 74.20A.055(2) does not support this argument. The 60-day rule permits DCS to collect back child support for the periods of time when Khanof lived outside of the home and Javan received TANF, so long as the case was in Good Cause Level A or DCS took reasonable efforts to locate Khanof.

Under RCW 74.20A.055(1), the secretary of the Department of Social and Health Services (Department) may serve a Notice and Finding of Financial Responsibility on

the responsible parent where there is no order establishing the parent's support obligation. The Notice and Finding of Financial Responsibility relates both to child support debt already accrued and periodic payments to be made in the future. RCW 74.20A.055(1). The Department must serve the Notice and Finding of Financial Responsibility on the responsible parent within 60 days from the date the state assumes responsibility for the support of the child. RCW 74.20A.055(2).[7]

The 60-day rule does not apply to Good Cause Level A enforcement actions. WAC 388-14A-3350(7)(a); WAC 388-422-0020(1)(a). "Good Cause Level A" means "support establishment or enforcement cannot proceed at all because of a risk of danger to the custodial parent . . . or children." WAC 388-14A-2060(1)(a).

Javan first received TANF on January 22, 2014. DCS designated the enforcement action Good Cause Level A and closed the case. In late October 2015, DCS changed the designation to Good Cause Level B. "Good Cause Level B" means "support establishment or enforcement can proceed without" the custodial parent's cooperation "but good cause exists" for the custodial parent "not to cooperate with DCS." WAC 388-14A-2060(1)(b). In mid-November 2015, DCS mailed the Notice and Finding of Financial Responsibility to Khanof.

---

[7] RCW 74.20A.055(2) further provides:

If the notice is not served within sixty days from such date, the department shall lose the right to reimbursement of payments made after the sixty-day period and before the date of notification: PROVIDED, That if the department exercises reasonable efforts to locate the debtor and is unable to do so the entire sixty-day period is tolled until such time as the debtor can be located.

We conclude the ALJ did not err in ordering Khanof to pay back child support for the periods of time when he lived outside the home. We affirm the order of the ALJ.

WE CONCUR: