995 P.2d 1257 (2000)
100 Wash.App. 158
The CITY OF BREMERTON, a municipal corporation, Respondent,
v.
William SESKO and Natacha Sesko, and their marital community, Appellants.
Nos. 23150-6-II, 23421-1-II.
Court of Appeals of Washington, Division 2.
February 25, 2000.
Publication Ordered March 31, 2000.
William J. Sesko, Bremerton, for Appellants.
Knute Arthur Rife, Glenna Lee Malanca, City of Bremerton Office of City Attorney, *1258 Bremerton, Jane Anne Ryan Koler, Casey & Pruzan, Seattle, for Respondent.
SEINFELD, J.
William and Natacha Sesko appeal from two orders granting the City of Bremerton permanent mandatory injunctions. The trial court found that William and Natacha Sesko were operating illegal junkyards on their property and that this constituted a nuisance. The injunctions require the Seskos to remove the objects at issue from their property. Finding no error, we affirm.

FACTS
The Seskos own properties at 3536 Arsenal Way and at 1701 Pennsylvania Avenue, both in Bremerton, Washington. The Pennsylvania Avenue property is located within 200 feet of the shoreline. After receiving complaints from neighboring property owners about old vehicles and piles of junk on these properties, the City investigated.
According to the trial court's findings, the Arsenal Way property
is covered with vehicles, heavy equipment, litter, vending machines, portable toilets, appliances, lumber scraps, metal scraps, vehicle parts, boats, metal tanks, wooden pallets, paint cans, litter debris and various other objects which are not associated with residential use of the property.
Clerk's Papers at 71-72. A different trial court judge found that the Pennsylvania Avenue property
is covered with old dilapidated vehicles, including boats, buses, and cars, tires, rusty tanks, rusty machine parts, junk piers, wooden pallets, concrete chunks, modular buildings, metal debris, storage tanks, old signs, the building on sled runners, old boats, a rusty barge, storage tanks, pontoons, a rusty breakwater float, mattresses, styrofoam floats, portable buildings, a crane, rusty metal objects, metal scraps, and wood scraps.
Clerk's Papers at 152.
The City determined that the Seskos were operating junkyards on their properties, contrary to the City zoning code. Thus, it issued cease and desist orders. The Seskos appealed to the City Planning Commission, contending that the properties were storage yards, not junkyards, and that William Sesko used some of the items for a research and development business. They also argued that they engaged in this use before the City annexed the property in 1990 and it was a legal non-conforming use. The Planning Commission upheld the City's orders, and the City Council rejected the Seskos's attempt to appeal the Arsenal Way decision.[1]
Thereafter, the City posted an order to vacate on the property. When the Seskos did not comply, the City filed suit, seeking an order of abatement and permanent injunction.
The trial court initially applied the doctrine of collateral estoppel in finding the Arsenal Way property to be a nuisance under RCW 7.48.120.[2] It entered summary judgment in favor of the City on that issue and proceeded to trial to determine the extent of the nuisance and the proper remedy. Following trial, the court entered findings and conclusions and judgment granting injunctive relief.
The Seskos appealed the Pennsylvania Avenue cease and desist order to the City Council, which affirmed it, and then to the superior court, which later dismissed their petition for want of prosecution. Again, when the Seskos failed to comply with the order, the City filed suit seeking to abate the nuisance and to enjoin the Seskos.
The court trying the Pennsylvania Avenue property case also relied upon the doctrine of *1259 collateral estoppel to preclude the relitigation of whether the property was being used as a junkyard. Following trial, the court granted the requested relief.
The Seskos now appeal to this court, contending that (1) the City may not enforce its zoning code separately from its Shoreline Master Program and may not enforce the zoning code at all because it is the more restrictive of the two; (2) the courts improperly applied the doctrine of collateral estoppel to find that the properties were nuisances; and (3) the courts abused their discretion in imposing the remedy of unconditional abatement.

DISCUSSION
A trial court's order granting an injunction is discretionary; we give it great deference on review and will overturn it only for an abuse of discretion. State v. Kelley, 77 Wash.App. 66, 69, 889 P.2d 940 (1995) (citing State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971)).

I. SHORELINE MASTER PROGRAM
The Seskos argue that the two sets of rules governing land use in the Citythe City's zoning code and the state's Shoreline Management Act (SMA)are inconsistent and, therefore, cannot be applied together. But they fail to support this argument with relevant authority. Thus, we need not address this issue. State v. Dennison, 115 Wash.2d 609, 629, 801 P.2d 193 (1990) (appellate court need not consider arguments for which party has not cited authority); RAP 10.3(a)(5) (appellate brief should contain argument supporting issues presented for review, citations to legal authority, and references to relevant parts of the record).
Further, the Seskos have failed to show that the two sets of rules are inconsistent. Although RCW 90.58.100(1) states that Shoreline Master Programs "shall constitute use regulations for the various shorelines of the state," it does not state that such programs shall be the exclusive land use regulations of lands located on the shoreline.
And the Attorney General Opinion (AGO) 1977 No. 5 cited by the Seskos indicates that the SMA is not the exclusive regulatory scheme for shorelines but, rather, must be read together with other regulatory schemes. AGO 1977 No. 5 at 6. Stricter regulations that do not conflict with the SMA may co-exist with it. AGO 1977 No. 5 at 6-7. Thus, the Seskos have failed to show either how the zoning code conflicts with the SMA or under what theory inconsistences between the SMA and the zoning code would prohibit the City from enforcing that code.

II. COLLATERAL ESTOPPEL
The Seskos next argue that the trial courts abused their discretion in applying the doctrine of collateral estoppel. During administrative proceedings in front of the City Planning Commission, the Commission viewed photographic and documentary evidence and heard testimony before determining that the properties were nuisances; then the Commission's decisions to uphold the orders became final rulings. Thereafter, the Arsenal Way trial court applied the doctrine of collateral estoppel in determining that the property was a nuisance per se under the meaning of the statute, and the Pennsylvania Avenue trial court applied the doctrine to preclude relitigation of the issue of whether that property was a junkyard.
A party asserting collateral estoppel as a bar must prove four elements: (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied. Reninger v. Department of Corrections, 134 Wash.2d 437, 449, 951 P.2d 782 (1998) (citing Southcenter Joint Venture v. National Democratic Policy Comm., 113 Wash.2d 413, 418, 780 P.2d 1282 (1989)). The decisions of administrative tribunals may have preclusive effect under collateral estoppel principles when (1) the agency acted within its competence to make a factual decision; (2) agency and court procedural differences are minimal; and (3) policy considerations support application of the doctrine. Reninger, 134 Wash.2d at 449-50, 951 P.2d 782.
Here, the issueswhether the Seskos's properties were junkyards and therefore *1260 nuisanceswere identical, the Commission made a final judgment on the merits, and the parties were the same. Further, there was no injustice in applying the doctrine to the Seskos as they received adequate opportunities to persuade the Commission of their position.
In addition, the facts satisfy the tests for application of the doctrine to an administrative body: (1) The City Planning Commission was acting within its competence when it made the factual decision that the Seskos had violated the City's zoning code by operating their properties as illegal junkyards; and (2) The procedural differences between the Commission and trial court did not unfairly deprive the Seskos of adequate opportunity to litigate this issue. The Commission received evidence in the form of photographs and documents; heard and weighed testimony from the City, the Seskos, and other interested parties; made a record of its proceedings; and made written findings and conclusions. And (3) policy considerations support application of the doctrine here. It prevented needless relitigation of the nuisance issue. See Shoemaker v. City of Bremerton, 109 Wash.2d 504, 745 P.2d 858 (1987).
Finally, it appears that application of the doctrine did not affect the outcome. In addition to reviewing the evidence in the Planning Commission record, both trial courts received additional evidence and concluded independently that the properties violated the zoning code and were nuisances.

III. REMEDIES
The Seskos argue that the trial courts abused their discretion in ordering unconditional abatement of the use that the Seskos were making of their properties. They suggest that the courts should have evaluated the various items of property and ordered the removal of only those items that were determined to be unlawful.
Under RCW 7.48, trial courts have broad remedial powers, including the power to unconditionally abate a nuisance. RCW 7.48.200. Both trial courts found that the nuisances on the Seskos's properties were extensive and had existed for years and that the Seskos had made very little attempt to rectify the situation. Given this record and history, the remedies are reasonable. The orders for injunctive relief do not prevent uses for business purposes; they only require the removal of the junk on the sites. Thus, the trial courts did not abuse their discretion in ordering unconditional abatement.
Accordingly, we affirm.
MORGAN, P.J., and HUNT, J., concur.
NOTES
[1] The director of the Department of Community Development advised the Seskos by letter dated February 11, 1997, that their appeal was rejected. The Seskos attempted to appeal this administrative decision to the City Planning Commission, but the record does not show any further action.
[2] RCW 7.48.120 states:

Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.