FILED
4/15/2024
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARCUS PRICE, | No. 84960-3-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON DEPARTMENT OF SOCIAL & HEALTH SERVICES, | |
| Respondent. | |

DÍAZ, J. — In separate Vulnerable Adult Protection Order (VAPO) and a Trust and Estate Dispute Resolution Act (TEDRA) actions, Marcus Price's family accused him of financially exploiting his elderly and infirm mother when he served as co-trustee of a trust in her benefit. The superior court found in both actions he had so exploited his mother, and this court affirmed those decisions in a consolidated appeal. Contemporaneously, the Department of Social and Health Services (DSHS), which had received a complaint, notified Price that it too had determined that he had financially exploited his mother. A judge with DSHS then denied Price's request for a hearing, holding that those prior actions collaterally estopped his challenge of its determination. The superior court transferred Price's petition for judicial review of DSHS' denial. Finding no error, we affirm.

I.    BACKGROUND

This court's prior opinion in the related matter presented many of the underlying facts in this case, which we will not repeat in their entirety.  Marcus E. Price v. Antoinette S. Price, No. 79328-4-I (Wash. Ct. App. May 4, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/793284.pdf.

Beginning in 1998, a revocable living trust provided for the care and welfare of Price's mother (B.P.) as the sole beneficiary during her lifetime.  Price, No. 79328-4-I slip op. at 2.  By 2005, B.P.'s mental and physical health had deteriorated to the point where she was no longer able to live independently.  Id. at 2.  Price was appointed co-trustee in 2007.  Id. at 3.  In 2017, doctors diagnosed B.P. with dementia and stated she could no longer independently care for herself or her property.  Id. at 3.

In 2018, a co-trustee, Price's sister, filed VAPO and TEDRA petitions against Price to restrain him from having contact with his mother and to remove him as trustee, respectively.  Id. at 4, 8.  In November 2018, the superior court found in both actions that Price had financially exploited B.P., a vulnerable adult.  Both orders were affirmed by this court in a consolidated appeal in May 2020.  Id. at 1-2.

In September 2018, DSHS notified Price by mail that, in investigating a referral it had received, its Adult Protective Services (APS) division had "determined that [he] financially exploited a vulnerable adult . . . [b]etween approximately January 14, 2015 and August 24, 2017 while serving as co-trustee."  In October 2018, Price requested a hearing with DSHS' Office of Administrative

Hearings to contest that finding. DSHS stayed the matter, by agreement of the parties, to await the resolution of Price's prior appeal to this court.

In July 2020, following this court's May 2020 decision, DSHS moved to deny the hearing request and dismiss the appeal, arguing that the decisions on the prior actions collaterally estopped Price's hearing request. An administrative law judge (ALJ) for DSHS granted the motion to deny Price's hearing request, dismissing his appeal. The DSHS' Board of Appeals (Board) affirmed the ALJ's order in December 2020.

Price then filed a petition of review of the Board's decision with the King County Superior Court, which then transferred that petition to this court.

## II.     ANALYSIS

### A.     Standard of Review

The Administrative Procedure Act, chapter 34.05 (APA), governs our review of these proceedings. Puget Sound Med. Supply v. Wash. State Dep't of Soc. & Health Servs., 156 Wn. App. 364, 369, 234 P.3d 246 (2010). "Agency action may be reversed where the agency has erroneously interpreted or applied the law." Postema v. Pollution Control Hrg's Bd., 142 Wn.2d 68, 77, 11 P.3d 726 (2000). We review the final administrative decision of the agency, here of the Board, rather than the underlying initial order, here of the ALJ. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 404, 858 P.2d 494 (1993), superseded on other grounds by LAWS OF 1993, ch. 483, § 1. And the appellant bears the burden of establishing the invalidity of an agency action. RCW 34.05.570(1)(a).

Price is appealing pro se, but he is still bound by the same procedural rules and substantive laws as attorneys. Holder v. City of Vancouver, 136 Wn. App. 104, 106, 147 P.3d 641 (2006). Thus, "[t]he scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties." Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd., 177 Wn.2d 136, 144, 298 P.3d 704 (2013) (citing RAP 5.3(a); RAP 10.3(a), (g); RAP 12.1)). And, an appellant's brief must have "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). That said, the Rules of Appellate Procedure are "liberally interpreted to promote justice and facilitate the decision of cases on the merits." RAP 1.2(a).

B.    Collateral Estoppel

Generally, collateral estoppel is a question of law reviewed de novo. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Collateral estoppel "'prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case.'" Barr v. Day, 124 Wn.2d 318, 324-25, 879 P.2d 912 (1994) (quoting Hanson v. City of Snohomish, 121 Wn.2d 552, 561, 852 P.2d 295 (1993)).

> A party asserting collateral estoppel as a bar must prove four elements: (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

City of Bremerton v. Sesko, 100 Wn. App. 158, 163, 995 P.2d 1257 (2000). When those elements are met, "[c]ollateral estoppel provides for finality in adjudications." Christensen, 152 Wn.2d at 307. We examine each element in turn.

1. Identical Issues

Price focuses his appeal solely on the first element of collateral estoppel, i.e., whether the issues were identical. He appears to primarily argue the superior court actions and DSHS proceedings covered different time periods, specifically that "the VAPO and the TEDRA matter was for the period of January 1, 2018, to December 31, 2018. Not the years of 2015-2017."[1]

We hold that the issues presented in the DSHS proceedings and the two superior court actions were identical. "[C]ollateral estoppel is limited to situations where the issue presented in the second proceeding is identical in all respects to an issue decided in the prior proceeding, and 'where the controlling facts and applicable legal rules remain unchanged.'" Lopez-Vasquez v. Dep't of Labor &

---

[1] Price also briefly claims the Board committed several procedural irregularities, including not requiring DSHS "provide[] account documentation that validated [] [t]he APS finding values" and "affirm[ing] the Departments [sic] finding without a hearing on the facts and merit." With the exception of merely referencing RCW 74.34.020(7) (which provides the definition of financial exploitation) and TEDRA in passing, Price's appellate briefing fails to cite to any legal authorities. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Additionally, Price provides no specific citations to the record. In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) (courts are not obligated "to comb the record" where counsel has failed to challenge specific findings and support arguments with citations to the record). Even so, this court "may nonetheless elect to address an issue that is inadequately briefed." State Farm Mut. Auto. Ins. Co. v. Avery, 114 Wn. App. 299, 310, 57 P.3d 300 (2002). As such, we will consider only his primary argument above.

Indus., 168 Wn. App. 341, 345-46, 276 P.3d 354 (2012) (quoting Lemond v. Dep't of Licensing, 143 Wn. App. 797, 805, 180 P.3d 829 (2008)).  As such, collateral estoppel "is appropriate only if the issue raised in the second case 'involves substantially the same bundle of legal principles.'"  Id. at 346.  Additionally, there must be "substantial similarity between the facts in this case and the prior cases."  State Farm Fire & Cas. Co. v. Ford Motor Co., 186 Wn. App. 715, 723, 346 P.3d 771 (2015).

The three proceedings relevant to this appeal addressed the following.  First, we consider the TEDRA order entered on November 9, 2018.  There, the court found that "[c]lear, cogent and convincing evidence establishes that Marcus E. Price engaged in financial exploitation as defined by RCW 74.34.020.[2]  Pursuant to RCW 74.34.130,[3] a Vulnerable Adult Protection Order should be issued for a period of five years, subject to renewal at the end of that period."  Price was additionally ordered to provide "all documents and other papers of the trustee

---

[2] RCW 74.34.020(7) defines "financial exploitation" as "the illegal or improper use, control over, or withholding of the property, income, resources, or trust funds of the vulnerable adult by any person or entity for any person's or entity's profit or advantage other than for the vulnerable adult's profit or advantage."  Improper use includes a "breach of a fiduciary duty, including, but not limited to, the misuse of a power of attorney, trust, or a guardianship appointment, that results in the unauthorized appropriation, sale, or transfer of the property, income, resources, or trust funds of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult."  RCW 74.34.020(7)(b).

[3] RCW 74.34.130 was repealed by the legislature in 2021.  LAWS OF 2021, ch. 215 § 170.  The legislature then "enacted chapter 7.105 RCW, which consolidated civil protection orders into one chapter."  DeSean v. Sanger, 2 Wn.3d 329, 333, 536 P.3d 191 (2023); RCW 7.105.065 (authorizing superior courts to issue VAPOs).  "Nothing in chapter 215, Laws of 2021 affects the validity of protection orders issued prior to July 1, 2022, under chapter 74.34 RCW."  RCW 7.105.550(2).  However, such orders "may be modified or terminated in accordance with the applicable provisions of RCW 7.105.500 through 7.105.550."  Id.

to the co-trustee. That includes all trust account statements, spreadsheets, etc. of trust documents." The court did not limit its order to any particular point of Price's tenure as co-trustee.

Second, we consider the permanent VAPO also entered on November 9, 2018. There, the court found "[b]y clear, cogent, and convincing evidence, the Respondent is found to have committed acts of abandonment, abuse, personal exploitation, neglect and financial exploitation of the vulnerable adult." As referenced in the above TEDRA order, this VAPO was enacted under RCW 74.34.130.[4] The VAPO also required that Price "provide a full and complete forensic accounting for all activities performed as Co-Trustee of the [B.P.] Trust from February 16, 2007 through the date of this Order." This time period was more narrow but still covered a broader time period than Price asserts.

Finally, we turn to the DSHS determination letter dated September 10, 2018. The letter informed Price that DSHS and its APS division "recently investigated a report that you may have mistreated a vulnerable adult"[5] and that "[b]ased on this investigation, APS determined that you financially exploited a

---

[4] Before its repeal in 2021, RCW 74.34.130 stated in part that a "court may order relief as it deems necessary for the protection of the vulnerable adult, including but not limited to the following . . . (1) Restraining respondent from committing acts of abandonment, abuse, neglect, or financial exploitation against the vulnerable adult." LAWS OF 2007, ch. 312 § 6; see also LAWS OF 2021, ch. 215 § 170 (repealed RCW 74.34.130). Again, following the 2021 repeal, the legislature consolidated civil protection orders into chapter 7.105 RCW. DeSean, 2 Wn.3d at 333; RCW 7.105.065 (authorizing superior courts to issue VAPOs).
[5] While the letter did not disclose the identity of the vulnerable adult due to various state privacy laws, it is undisputed that the letter was referencing B.P.

vulnerable adult" and that the evidence showed "it is more likely than not"[6] various actions occurred "[b]etween approximately January 14, 2015 and August 24, 2017, while [Price] serv[ed] as co-trustee for a vulnerable adult." The letter also indicated it utilized the definition for "financial exploitation" codified at RCW 74.34.020(7).

As can be seen above, all three matters involved Price, the same trust, and the same vulnerable adult, that being Price's own mother. All three matters also relied on the same legal framework contained within RCW 74.34 and the same definition for "financial exploitation" codified at RCW 74.34.020(7).

Additionally, contrary to Price's assertions, the VAPO and TEDRA actions contemplated more than the period between January 1, 2018, to December 31, 2018. Specifically, both superior court actions considered and sought out accounting concerning Price's entire tenure as co-trustee, beginning in 2007. The wording of the superior court's financial exploitation findings also do not indicate the court intended their scope be temporally limited as Price argues.

In turn, we hold the Board did not err when it held that the VAPO and TEDRA actions encompassed the same facts, legal rules, and same bundle of legal principles across the three actions. And thus, the first element of collateral estoppel is satisfied.

---

[6] The DSHS letter's usage of "more likely than not" appears to mirror a "preponderance of the evidence" standard, which requires evidence showing the proposition "is more probably true than not true." In re Pugh, 7 Wn. App. 2d 412, 422, 433 P.3d 872 (2019) (quoting In re Welfare of Sego, 82 Wn.2d 736, 739 n.2, 513 P.2d 831 (1973)). In comparison, the VAPO and TEDRA orders were based on "[c]lear, cogent, and convincing evidence", which is defined as "a quantum of proof that is more than a preponderance of the evidence, but less than what is needed to establish proof beyond a reasonable doubt." Mueller v. Wells, 185 Wn.2d 1, 10 n.5, 367 P.3d 580 (2016).

2. Other Elements

Price did not expressly place the other elements for collateral estoppel at issue. Even so, "this court nevertheless has inherent authority to consider an issue which the parties have not raised if doing so is necessary to a proper decision". Wills v. Kirkpatrick, 56 Wn. App. 757, 758 n.1, 785 P.2d 834 (1990).

First, we consider the element requiring a "final judgment on the merits." Sesko, 100 Wn. App. at 163. This court has previously held that "[f]inality is normally 'conclusively established by a judgment on the merits by affirmation on appeal.'" In re Dependency of H.S., 188 Wn. App. 654, 661, 356 P.3d 202 (2015) (quoting Chau v. City of Seattle, 60 Wn. App. 115, 120, 802 P.2d 822 (1991)). As referenced earlier, the VAPO and TEDRA actions were both affirmed by a consolidated appeal to this court, and Price did not appeal further. Price, No. 79328-4-I slip op. at 1-2. As such, both the VAPO and TEDRA orders constitute final orders.

Second, we consider the element requiring "the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication." Sesko, 100 Wn. App. at 163. Price is expressly listed as a party in the VAPO and TEDRA orders as well as the DSHS determination letter. This element is met.

Finally, we consider the element requiring that "application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied." Id. This element has prevented, for example, application of the doctrine when "there is an intervening change in controlling law" or if application of the doctrine

9

would mean "a litigant did not have a meaningful opportunity to appeal prior decision." Thompson v. Dept. of Licensing, 138 Wn.2d 783, 795 n.7, 982 P.2d 601 (1999).

More broadly, our Supreme Court has held that "this injustice element is most firmly rooted in procedural unfairness." Id. at 796. Specifically, this court has held that "courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question." Satsop Valley Homeowners Ass'n Inc. v. Northwest Rock, Inc., 126 Wn. App. 536, 543, 108 P.3d 1247 (2005).

Here, Price received separate hearings before the superior court for both the VAPO and TEDRA actions as well as for his appeal before the ALJ, where testimony and evidence could be brought and cross-examined. Price, No. 79328-4-I slip op. at 9-10. Also, while Price now appeals pro se, he was represented by counsel during the VAPO and TEDRA proceedings as well as in the ALJ and Board proceedings. Additionally, the ALJ and Board explained their invocation of collateral estoppel in depth and methodically walked through each step of the collateral estoppel analysis. Procedural unfairness is absent.

Finally, Price's complaint that the Board did not provide a hearing is unavailing. As explained in the governing regulations, "[i]f a request is made for a review judge to review an initial order, *it does not mean there is another hearing conducted by a review judge*;" rather "[t]he review judge considers the request, the initial order, and the record, and *may* hear oral argument, before deciding if the initial order should be changed." WAC 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(3) & (4) (emphasis added). Price received all the process he could reasonably expect to receive.

Thus, we find the Board did not err in denying his request of a hearing as barred by the doctrine of collateral estoppel.

### III.    CONCLUSION

We affirm the decision of the Board.


Díaz, J.

WE CONCUR:

Chung, J.

Dwyer, J.